By the Court. Woodruff, J.
It is not necessary for us to consider the question, whether, if the purchases made by the plaintiffs for the defendant, were in truth made from persons who neither owned any stock at the time nor had authority from any person who did own stock, the defendant would be, nevertheless, liable to the plaintiffs under any obligation to indemnify them against losses sustained by them by performing what-they might deem an honorary obligation. When it becomes necessary to decide that question, the case of Ward v. Van Duzer in this court, (2 Hall, 162,) Gram v. Stebbins, (6 Paige, 124,) and Gould v. Staples, (5 Sand., 411,) will, perhaps, suggest views which may properly affect the decision.
For in the view hereinafter taken of the rights of the parties will it be necessary to decide whether it is in general necessary, in declaring upon a contract, void by the statute of frauds if not in writing, to aver in the complaint that such writing exists; upon which question we do not intend to intimate here a dissent from the decision at the Special Term,(reported 2 Duer, 609, and Id. 626).
For whether, if such be the general rule, it is necessary for an agent, in a case like the present, who sues to recover indemnity, to aver that the contract made by him for his principal, and performed by him on behalf of his principal, was a contract in writing.
*249 The present case may be disposed of, we think, upon another ground, in considering which, let it be assumed that the usage and custom exists which is averred in the complaint, and that it was known to, and binding upon, the defendant, and that the legal conclusions stated in the introductory part of the complaint are as therein alleged, viz.: that stock-brokers employed by other persons to purchase stocks, make such purchases in their own names, without disclosing their principals; that such brokers are personally liable for the performance of the contracts of purchase so made; that their principals “ are liable to perform the contracts of purchase” so made in their behalf, and to indemnify and save harmless such brokers against their liability upon such contracts, at the maturity thereof; that the plaintiffs are stock-brokers, and, as such, were employed by the defendant to purchase the stocks mentioned in the complaint, and did purchase the same for him, as therein alleged, and gave him notice of such purchases in due season; and let it be further assumed, that such contracts of purchase were in writing, and that, at the time of such purchases, the respective vendors were owners in their own right of the shares sold, and in the actual possession of the certificates thereof.
This presents the Case no more strongly in favor of the plaintiffs than if the defendant had expressly authorized the plaintiffs to purchase the stocks for him, in their own names, without disclosing his name as principal, and had in terms agreed that he would perform the contract of purchase, and would indemnify and save them harmless against the liability upon such contracts which, in such case, the law (irrespective of any usage or custom) imposes upon them, at the maturity of the contracts respectively.
In either case, whether this relation of the parties is established by express agreement, or by the alleged usage and its legal consequences, certain propositions may be stated that are obvious.
First, The plaintiffs, by reason of their acceptance of such employment, are not as between them and their principal bound to advance any money for him. They may insist upon his performing the contracts so made, by accepting the stocks when they shall be tendered for delivery and making payment therefor; or, they may, if they so elect, (still concealing the name of their principal,) perform the contracts themselves, accepting a transfer of the stocks and paying the price in discharge of their owil liability. This *250 election may be conceded to them as reasonably resulting from the authority to contract in their own names, and make themselves liable to the sellers of the stock.
Second, On the other hand, the defendant was not bound to part with his money without at the same time receiving the stock. If he were dealing in person with the sellers, they must tender him the stock—payment and delivery would be simultaneous acts. (Green v. Reynolds, 2 J. R. 207; Jones v. Gardner, 10 J. R. 266; Porter v. Rose, 12 J. R. 209; Parker v. Parmele, 20 J. R. 135; Dunham v. Mason, 4 Seld. 513; Lester v. Jewett, 1 Kern. 453, and cases there cited. Nothing in the eircumstance that he employed the plaintiffs to purchase the stock for him, deliverable at a future day, implied an obligation on his part to entrust to them the money in reliance upon their fidelity in transferring to him the stock after they should receive it. They were, of course, at liberty to decline the employment, and to refuse to incur any hazard by making the purchase for him without the money in hand, or unless he expressly agreed to furnish the money to them, with which to pay for the stock when it should be tendered to them. But this obligation does not result from his employing them to make the purchase. The complaint itself does not allege any such agreement, nor at all proceed upon the ground that he was bound to furnish to them the money, or treat his neglect to do so as a breach of his obligation or duty. It was conceded by the counsel for the plaintiffs, on the argument, that down to, and on the very day of the maturity of the contracts, there was no obligation on his part to pay the price to any one without a cotemporaneous delivery to himself of the stocks purchased; and whether so conceded or not, such was his position.
The necessary result of these propositions is, that the plaintiffs should either place the defendant in a situation in which he could receive the stock from the sellers and pay to them the price, or else receive the stock themselves, and tender them to him. It does not appear by the complaint that the stocks have been offered to him by any one, nor that the defendant was furnished with, or even offered any vouchers, authority, or evidence, of his interest in the purchases, which would have enabled him (if so disposed) to demand or receive the stock from the sellers.. The plaintiffs preferred still to conceal their principal from the Sellers, and per *251 form the contracts themselves for him. Having done so, it was their duty to offer him the stocks, or, at the least, to hold themselves in readiness to transfer the same to him upon payment of the price, with their commissions. The duties resulting from their acceptance of such employment embrace in such case this duty to transfer to him on receiving the money. They hold the legal title;—an affirmative act of transfer- is necessary before the defendant can derive any benefit from the agency of the plaintiffs, to which benefit he is entitled upon making payment on his part.
The plaintiffs, having performed the contracts and received transfers of the stock, may be regarded as in the same situation as if the defendant, on a given day, had directed them to go into the market and purchase shares of stock for him for cash, and they had done so, paying therefor and receiving the transfers to themselves. The defendant would be bound, and they might require him to repay the money and receive a transfer from them. But they could not require him to pay the money if themselves were not in readiness to confer on him the title to the stock they were employed to purchase.
In such a case, and equally so in the case shown by this complaint, the plaintiffs might have caused the stock to be transferred by the sellers to the defendant, and then their action for money paid to his use would have been,(laying all questions regarding the validity of the original contracts out of view,)simple and obvious. And if, for their own security, they preferred to cause the transfer to be made to themselves, they cannot thereby place the defendant in any worse situation in regard to his right to have the stock on payment of the money.
Instead of offering the stock to the defendant, and without even giving him notice that the stock had been delivered, as appears by the complaint, they sold the stock. They neither demanded from him the payment of the money they had advanced, nor gave him notice of the sale. They have disabled themselves to deliver the stock to him, and in effect converted the stock to their own use; thus placing the stock beyond his reach, without tender or notice to him. This is a complete defence to their claim upon him for the price of the stock.
It is argued that their sale and disposition of the stock; without *252 notice or tender or demand, is at most only a ground of counterclaim on his part for damages for the appropriation of his stock, that he is bound to pay to them the money they have paid for him, whether he receives the stock or not; that his duty to pay is unconditional.
Such is not the true aspect of their relation to each other. Having taken the transfer of the legal title to themselves they could not call upon him to place himself in their power; their duty to transfer that title to him, and his to pay, were reciprocal and dependent.
But it is further argued that the defendant broke his agreement by not himself paying and receiving the stock on the day the contracts matured, and for that purpose seeking out the plaintiffs and attending with them. This suggestion has already been sufficiently answered. They have never placed him in a situation in which he could perform the contracts himself and receive the stock from the sellers; nor has the defendant been put in default by a tender of the stock, or even an offer to transfer the legal title thereto upon payment of the price.
These views seem to us to fully sustain the order appealed from, so far as relates to the first four causes of action. It is by no means clear that the same result would not follow if it were conceded that immediately upon receiving the stock from the sellers and making payment therefor, the plaintiffs, without demand or tender on their part to the defendant, might have brought their action. Would it not have been a sufficient defence to such an action, that before suit was brought the defendant tendered the price paid, with interest and commissions, and demanded the stock, and the plaintiffs refused to transfer the title to him ? And if so, when it appears by the complaint that the plaintiffs have sold the stock, and so have rendered such a tender and demand unavailing, is not such tender and demand waived, and the defence established by the complaint itself?
It does not, however, follow from what has been said, that the demurrer to the fifth cause of action, is well taken. The sufficiency of the averments of the complaint in this respect, was not discussed at length, though the counsel for the, defendant very briefly stated the point orally in his discussion.
Laying out of view so much as relates to commissions upon the *253 purchases of stock, mentioned in the other part of the complaint, this fifth cause of action reads, in connection with the introductory part of the complaint, thus:
That the plaintiffs, at the time hereinafter mentioned, and before and afterwards, were partners and stock-brokers at, etc., and that they reasonably deserve to have from the defendant for their services, as such stock-brokers, in making.....other purchases and sales of stock, which they were employed by the said defendant to make, and which they did make as his brokers, during the .....year 1854, a large sum of money, to wit, the sum of $115 or thereabouts, and that the defendant has not paid the said commissions, or any part thereof, to the plaintiffs.
Here is an averment that the plaintiffs were employed by the defendant to make purchases and sales of stock; that they made such purchases and sales as his brokers; and that they deserved to have for their services therein, a large sum of money, to wit, etc.; and that the defendant has not paid them. Since the decision of the Court of Appeals in Allen v. Patterson, (3 Selden, 476,) we cannot say that here are not facts enough stated to entitle the plaintiffs to recover. If the facts alleged were proved on the trial, they must have judgment. Ho doubt the complaint is greatly deficient in particulars, which, upon a proper motion, the plaintiffs would be required to supply, but the facts, which are necessary to a statement of a cause of action, are there, and this is the only ground of demurrer assigned.
The order appealed from, in so far as it sustains the demurrer, to the first, second, third, and fourth causes of action, must be affirmed, with $10, costs of the appeal, and with the same leave to amend, and upon the terms mentioned in the order appealed from.
And so far as it sustains the demurrer to the fifth cause of action, it must be reversed and judgment thereon be entered for the plaintiffs, with leave, however, to the defendant to withdraw the demurrer, and answer within twenty days, if so advised.