By the Court, Garvin, J.
To sustain this action the plaintiff was bound to show title in himself to the securities and coin for the conversion of which it is brought. There was abundant evidence to sustain the verdict,' provided that question is to turn simply upon the issues found by the jury. Upon the'first question, that of title, the property either belonged to the plaintiff or the defendants, .and it will hardly be contended that the defendants were the owners of the coin or securities. Irrespective of the defendants’ lien thereon, there can be no doubt that the plaintiff was the owner, and had the right to call upon the defendants at any time to deliver him the securities and coin upon payment of their commissions. They doubtless had a lien thereon for their advances, but beyond this they *511 had no rights in the property of the plaintiff, except such as they possessed by virtue of any contract and arrangement between the partios. The defendants’ letters, telegrams, notices, reports of sales, and demands for further margins, all proceed upon the theory that the coin and bonds belonged to the plaintiff, and were his property. We must therefore assume that the title to .both coin and securities was in the plaintiff, held by the defendants for him. Of this there was abundant evidence; in fact, it was not disputed, either as 'to the $67,000'' in coin, or the $114,000 United States bonds. There is evidence that the gold was to be held for 250 in currency, and there is also evidence of an agreement to .carry the bonds until after the 1st of January, 1865, and there is no evidence in the case contradicting it; if there had been, that question is settled by the verdict. It is not disputed that the bonds were sold by the defendants in September and November, 1864, for prices ranging from 106 J- to 110-110|-, and that on the 7th of December, United States bonds were worth 118. Thus there is pro'of tending to show the title to the property in the plaintiff, both as to the coin and bonds. 2. Sale of the property—of the coin for less than 250, and of the bonds before the 1st of January, 1865. Upon this evidence aloné, without any thing else, it would present a clear case of title in the plaintiff, and conversion by the defendants, for which he would be entitled to damages, provided the sales were made without authority from the plaintiff. Of this authority there is no evidence in the case. As to the bonds, the question of notice to the plaintiff of time and place of sale has nothing to do with the case, if the defendants agreed to hold the bonds till after the 1st of January, 1865: Nor as to the coin, if the instructions to hold the coin for 250 were binding upon the defendants. In such case whether there was a notice of time and place of sale or not is of no importance, unless the plaintiff authorized it before the sale or ratified it afterwards. Of authority to sell there is no proof, and the jury have expressly found the plaintiff did *512 not acquiesce in the disposition made by the defendants- of the coin or securities, with full knowledge of all the facts relating thereto.
This brings us tp the objections and exceptions taken by the defendants: (1.) To the rulings of the court in receiving and excluding "evidence. (2.) Denying the motion to dismiss the complaint;'and (3.) Exceptions to the rulings of the ' court in connection with the charge to the jury. Without going over in detail, each particular exception taken by the defendants to the exclusion of evidence offered, and to the admission of that received, it is apparent that the same questions of law are presented, substantially, by the exceptions taken to the charge of the court, with one qualification, and that pertains to the evidence of custom and usage, which was offered and rejected. It will, therefore, .only be necessary to pass upon the exceptions taken to the charge, tó determine all the questions presented for review, holding, as we do, that the motion to dismiss the complaint was properly overruled, and that the several motions to compel the plaintiff to elect upon which count, transaction, or cause of action he would proceed, were rightly disposed of. (Lansing v. Wiswall, 5 Denio, 213.)
Upon the exclusion by the court of the evidence of custom and usage, the courts have held that usage is not admissible to contradict the contract, and that no usage is admissible to-control, the rules of law. (34 N. Y. Rep. 417. 16 id. 393.). The admission of the evidence would have been a violation of both these principles. ' The contract proved, was to carry the bonds which the defendants held for the plaintiff, and as the defendants’ security for their advances and commissions until after the first of January, 1865. The defendants sold before that period, without notice of the time or place of sale.
The offer was to prove a usage that a broker buying stocks for his principal, need not preserve for delivery the identical stocks purchased, but it is sufficient to deliver or sell an equal quantity in value and. amount of stocks of the *513 same character; and that on failure of the principal to re- , imhurse his broker, the latter might sell the stocks without notice of the time and place of sale. If the transaction had been a mere loan of securities for the defendants’ use a return of other .stocks of like nature, kind and amount would be sufficient. But where stocks or securities are held as security for advances, the rule is different; in such case the title to the security remains unchanged; that is the rule as established by the courts. (Dykers v. Allen, 7 Hill, 497.) The proof offered of custom and usage, authorizing a sale of stocks on failure to repay advances, without notice of time or place of sale, was properly excluded. This has been so often held that it hadly needs the citation of authorities to sustain it. If the broker desires to possess himself of this power he must make an agreement that shall permit him to do so. Upon both these propositions we think the rulings of the court should be sustained. (Dykers v. Allen, Nourse v. Prime, 4 John. Ch. 490. Wheeler v. Newbould, 16 N. Y. Rep. 392.) The proposed proof of . .usage was in contradiction of the contract, and clearly against the rules of law. (Bowen v. Newell, 4 Selden, 190. Merchants’ Bank v. Woodruff, 6 Hill, 176, and cases cited by Mr. Hill. Higgins v. Moore, 34 N. Y. Rep. 417.)
It is also quite plain that if there was an agreement to carry the bonds till after January, 1865, their 'sale was unauthorized ; and whether there was such an agreement or not, a sale without notice of time or place was unauthorized either by the terms of the contract as proved, or by the rules of law. All the questions of fact were put to the jury after stating the theory of the plaintiff’s case. Upon the facts,- the court say, if you find the facts to be in both cases, (meaning coin and securities,) as the plaintiff claims, he is entitled to such damages. It is true the court instructed . the jury that the plaintiff put the securities into the hands of the defendants to be held for their advances,, but this was upon the uncontradicted evidence of the case, and was perfectly proper, (20 N. Y. Rep. 126;) but upon the ques *514 tion of what the contract was as to instructions in regard to holding the coin and appropriating the securities, the question of fact was expressly submitted to them. Upon the other exceptions taken to the rejection and admission of evidence, we think the rulings of the court should be .sustained.
Second. Several exceptions were taken to the charge, some of which are already disposed of by the views thus far taken of the case; those remaining to be considered are: (1.) It is claimed the court erred in withdrawing from the jury the first question in writing submitted to their consideration. ■ The submission of the question in this form was purely discretionary. The language of the Code is “the court may direct the jury to find a special verdict.” (§ 261.) It was of no importance whether done or not, and its withdrawal from their consideration furnishes no ground of exception. Both questions might have been withdrawn without harm to either party before the jury had agreed upon their verdict.
It is not like the case of issues, framed by the court, sent down to the circuit for trial, upon which special findings are required upon specified issues. The court withdrew the first question in waiting from the consideration of the jury, and instructed them they need not answer it. This we think the court had the right and power to do, and was purely a matter of discretion over which we have no control. Thus far this is a case of a breach of both contracts by the defendants, in regard to the coin and the securities, and therefore a breach of duty in violating the agreements, and a conversion of the property to the defendants’ use, resulting in loss, by the plaintiff, of large gains and profits in the sale thereof, had the coin and securities been held as directed by the plaintiff, and agreed to by the defendants. The only remaining question is one of damages. The court adopted the rule laid down in Scott v. Rogers, (31 N. Y. Rep. 676,) which was more favorable to the defendant's than that afterwards promulgated by the same court *515 in Burt v. Dutcher, (34 N. Y. Rep. 493.) Certainly, whatever the rule is, if there is any difference in the two cases, the defendants have no cause to complain, as the rule laid down on the trial is most favorable to them. This disposes of the question of damages in regard to the conversion of the bonds.
But other objections and exceptions are presented regarding the transactions in gold. (1.) To the admission of the evidence fixing the value of coin in currency, and adopting that price as the measure of damages in the charge of the court to the jury. We think the rulings of the court were right.
The Court of Appeals simply holds that treasury notes are a legal tender in payment of debts between private persons (27 N. Y. Rep. 400;) and that a mortgage, which by its terms is payable in gold or silver coin-, may be paid in United States legal tender notes, and that such notes are the lawful money of the United States. (Rodes v. Bronson, 34 N. Y. Rep. 649.)
This action is not brought to enforce the payment of a debt, but to recover damages for the conversion of the plaintiff’s property.
A judgment may be paid in treasury notes, and the plaintiff cannot demand gold or silver therefor. How is the plaintiff to obtain indemnity for his loss unless the value of the coin, in currency, is made the measure of damages ? There never may be a time after the trial when coin would bring the same price it would before; any other rule would work great injustice.
The rule of damages is the highest market price of the property converted, between the time of the taking and that of the trial. (34 N. Y. Rep. 493.) This market price, recovered and put in judgment, becomes a debt. The defendants may pay and satisfy it by the tender and payment of treasury notes. The plaintiff cannot demand gold or silver coin in payment of his judgment, but must take the treasury notes. We must, therefore, in view of the case of the Metropolitan Bank v. Van Dyck, (27 N. Y. Rep. 400,) hold *516 that the rulings of the court were right in receiving the evidence and submitting the question of the value of the coin to the jury. There were some other exceptions, none of which were well taken.
Entertaining these views, the exceptions taken by the defendants should be overruled, and judgment entered for the plaintiff with costs, and the order denying a new trial should be affirmed, with costs.
Monell, J. concurred.
McCunn, J.
The principal questions in this case to be disposed of by the court, are: First, was there an agreement on the part of the defendants to 'carry the securities placed in their hands by the plaintiff until the 1st of January, 1865 ? Second, did the defendants render to the plaintiff accounts of the disposition of such securities and gold,which accounts showed a balance in the defendants’ favor, and in which the plaintiff acquiesced, after the accounts were rendered with a full knowledge of all the facts relating thereto ? and did the rendering amount to an account stated between the parties so as to bind the plaintiff? The rulings of the court, and the points raised by the parties to the action during the progress of the trial, being of secondary importance, I shall hastily touch thereon.
In considering the first question, the only doubt presented is whether the learned chief justice was justified in withdrawing that question from the jury. I think he was, for the facts as to that question were so clear and uncontradicted, that it did not require the action of the jury to pass upon them so as to enable the court to apply the law. The witness, Saulsbury, testifies that the defendants were to purchase and carry stocks for the plaintiff, and he says the agreement was to carry them to the 1st of January, and the clear instructions to be found in the letter of the plaintiff to the defendants of the 17th of October, 1865, were to the effect that all the gold bought for the plaintiff, and that sent by the plaintiff to the defendants, should be held until *517 it reached 250. And it will be observed that these instructions were reiterated from time to time, until all the gold was placed in the hands of the defendants to be carried by them for the plaintiff. I cannot find a tittle of proof in the case to the contrary of this. It is true, the counsel for the defendants claim that out of .the lengthy correspondence by letters and telegraph there is evidence going to show that no agreement was made to carry the gold and securities until January, 1865, but that we must impliedly take it, no such understanding, as to carrying into January, existed. I can see no implied agreement'in such .letters and telegrams, to vary the former express contract on the part of the defendants to carry the United States bonds and the gold. The parties had a long running account between each other, on the one side, as bankers here, on the other, as bankers in St. Louis, dating long before this special agreement and continuing to the time when the dispute about the sales arose. And it was concerning this account that the letters and telegrams were sent and received, and, whenever the letters, or telegrams, or accounts related to the gold and bonds in dispute, they simply related to them as they were held as collateral securities, or as pledges given by the plaintiff to the defendants, to secure other banking transactions. Those letters and telegrams were never intended as authority from the plaintiff to the defendants to sell the bonds and gold without the proper notice and demand required in all cases where pledges of the like kind are made. Indeed, the learned chief justice, in his charge, said that the defendants had no other rights than those of ordinary pledgees, without any speccial rights, and in that instruction he is justified in a series of decisions, which must be recognized as the law on the subject, (Willard’s Eq. Jur. 456, and cases cited)
In all pledges, before a sále takes place, there must be a demand, and that demand must be seasonable in time, and there must be a notice of the sale. Now, in this case, it is conceded, there was no notice or demand, neither was there waiver of such notice or demand; yet, without the one or *518 the other, the defendants had no right to sell the securities. In Wilson v. Little, (2 N. Y. Rep. 443,) it was held that a waiver of notice was not a waiver of demand; and in the case of Genet v. Howland, (45 Barb. 560,) it was held that notice was not equivalent to a demand. In Milliken v. Dehow, (27 N. Y. Rep. 364,) there was a consignment of cotton, and the consignee was to keep the margin good; and it was held that the consignor could not sell in that case; that he must demand the margin before selling. He had leave by contract to sell without notice; but that was not enough. Demand was not waived. The question in that ease was whether a demand was necessary, and the necessity was declared by the court. In Andrews v. Clerke, (3 Bosw. 585,) it was held that the plaintiff was not in default, so that the defendants had a right to sell, though they had given him notice that they anticipated a fall bn a certain day; that the pledgee could not sell without the fall first occurring, and then giving him notice, so as to cut off his equity of redemption. And in Merwin v. Hamilton, (6 Duer, 244, 251,) the pledgees were held liable because they did not make demand of judgment and give notice of sale. In the case of Durant v. Einstein, heard in August last, at special term, in an opinion of this court, where all the foregoing authorities are discussed, the court held that a party’s property could not be sold at will, without first making a demand upon him, and giving him notice of the sale, to enable him to prevent its being sacrificed.
The learned judge below was therefore justified in withholding from the jury the question of the agreement to carry the gold and bonds for the plaintiff, and that he was also justified in saying to the jury that “ these parties are entitled to have applied to. their dealings, neither more beneficial nor harsher principles of law than other members of the community, and that the dealings of brokers in stocks or securities are not by their necessities or the customs they adopt, taken out of the general rule. A party who has chattels, or securities' or property of • any kind, *519 pledged to him for the payment of a debt, without some express agreement to that effect, has no other authority than what he acquires as pledgee or mortgagee of that stock or chattel, and has no right to sell it, without giving notice to the person who owns it of the time and place of sale, so that he may be enabled to raise the money by that time, to take up the loan.” There was no notice of time and place of sale, and therefore the sale was unwarranted.
The next question is, how far did the accounts rendered by the defendants to the plaintiff bind the latter, and did these accounts act as a bar to this action ? It is claimed by the defendants, that they rendered accounts to the plaintiff, in which they stated the sales of all the securities at certain prices and at certain times; that they also rendered an account of certain sums of money which they expended for him.; and' they claim that, taking into consideration all the circumstances, the relations in which the parties stood to each other, the communications by telegraph, by letter, and through Saulsbury, it is clear that the accounts were rendered to the plaintiff, with a full knowledge on his.part of all his rights and all their liabilities, and that he accepted the balance that was therein set forth against himself, and thereby ratified all their acts in the disposition of his property. The plaintiff denies all this, and says that he never accepted said accounts as binding on him; on the contrary, that he never gave the defendants color of authority that would lead them to suppose that he had, by receiving these accounts, ratified or sanctioned their acts in the premises. On this second question, there was testimony on both sides, and the court left it for the jury to say which side was correct in its assertions, and the jury found for the plaintiff. I) therefore, hold on this point that the jury’s- findings in this respect must be final and conclusive.
. The less difficult- and less important questions, sueh as the ruling on evidence, the charge of the learned judge, and the request to charge, I think, I can show to have no virtue in them. i
*520 As to the motion on the part of the defendants’ counsel, asking the court to charge forty-two, separate and distinct propositions, a large number of them being mere repetitions of former requests; these requests were presented in a body, and I hold that it is not the duty of the court to undergo the labor of considering them together. On the contrary, the counsel slrould have submitted and read each proposition separately and in detail, so that the court would have been enabled to deliberate and pass upon each distinct proposition. I hold, therefore, the rule to be that each proposition, or request to- charge, should be distinctly and separately made., and a refusal on the part of the court to charge these forty-two propositions in bulk, other than as he had charged, is not error. If ext, as to the charge: A general exception to a charge, as in this case, taken after the charge was delivered, is not specific enough to raise or present any question for reversal. (Newell v. Doty, 33 N. Y. Rep. 85. Jones v. Osgood, 2 Seld. 233.)
“It is the duty of counsel to point out, at the time, in what respect the charge did not conform to the requests, and it is not the duty of the court, by comparing every portion, to see if there is a discrepancy. Perhaps, if attention had been called to the precise point of which complaint was to be made, it would have been corrected. The party complaining must put Ms finger on the point of which he complains.” (Jones v. Osgood, supra.)
Last. The court committed no error in ruling on the evidence. The objection to the letter of Saulsbury was not well taken, because the defendants had not first inquired about such communication. It was right, therefore, to have the subject matter exhausted.
The agreement was a positive undertaking on the part of the defendants to carry certain specific securities, and to cany gold until its price advanced to 250; and, as the custom of brokers, even if admitted, could not vary a positive agreement, the custom was properly ruled out. The custom of brokers, in not preserving the identity of stocks *521 purchased hy brokers for parties, was immaterial, because even the substituted securities, which the defendants were said to have supplied for the plaintiff, were sold without demand or notice.
Judgment should be affirmed, with costs.