By the Court.—Neilson, J.
The defendant, as the *431 broker of Henry W. Read, the testator, purchased for him certain bonds of the United States, with coupons attached. The testator contributed some money towards the purchase, but the larger portion of the price was advanced by the defendant. He held the bonds as security for what might be due to him on the account, and in the due course of business collected some of the coupons. The legal title to the bonds and coupons was in the testator.
The amount due to the defendant on those transactions for advances, interest and commissions was never tendered to him, but the bonds were demanded when he was not able to deliver them ; on the first occasion, ■ because they were 'held by other parties as security in respect to some of the defendant’s engagements ; on the second, because he had actually sold them. Such demand, unless accompanied by a known ability and readiness to satisfy defendant’s claims, was of little moment. But the testator might have directed a sale of the bonds, in whole or in part, for that purpose.
It does not appear that the plaintiff or his testator was in default in respect to the defendant’s claims. Where the broker, upon a partial advance, commonly called marginal security, purchases, holds and carries bonds or stocks, for and at the risk of the customer, no time being fixed for reimbursement, the broker can put the customer in default only by tendering the bonds or stocks, and demanding payment. Without such tender and demand he could not maintain an action to recover his advances and commissions (Merwin v. Hamilton, 6 Duer, 244).
Previous to the defendant’s sale of the bonds, the account presented a large balance in his favor,, the defendant’ s advances, but not the value of the bonds, being stated. After the sale, and the crediting of the proceeds, the balance against the defendant, including perhaps the increased value of the bonds in the market, is *432 claimed to have been about thirty-three thousand five hundred dollars. The amount of that balance is not now material, but it is material that the defendant, according to the un contradicted testimony, and in his correspondence, admitted his liability for an amount which, without success, he had been endeavoring to discharge. The action was brought to recover that amount, as damages.
As the bonds had been held by the defendant as a pledge, the sale without notice was without authority,— a breach of the agreement. In the complaint it is properly called an unlawful conversion of the bonds to the defendant’s own use.
If the defendant had tendered the bonds and demanded payment, and, upon default, had given notice of sale, the net proceeds, remaining over and above his claims, would have been the measure of his liability. In that case there would have been no claim for damages properly so called. The claim would have been for so much money received to the plaintiff’s use. But having sold the bonds without authority, he became liable for the subsequently enhanced market value of the bonds and coupons, less the amount of his own claims, as, by his wrongful act, the plaintiff had suffered damages to that extent. Those damages, shifting in amount according to the fluctuations of the market, could not be determined until the day of settlement or of trial (if the subject of litigation) in an action brought within a reasonable time after the wrongful sale. In that case the claim to indemnity does not rest strictly in contract, but arises rather as the natural result of the wrong committed by the defendant ; it is for damages, using that term in its strictest sense.
In the absence of a tender to the defendant of the amount due to him while he was holding the bonds, neither the testator nor the plaintiff was entitled to the *433 possession of them. The right of possession resided in the defendant. After the sale the question as to the possession of the bonds, or the right of possession, as between these parties, ceased to have any practical importance. The bonds were beyond the control of the defendant, beyond the reach or reclamation of the plaintiff. A tender to and demand of the defendant while he held the bonds would have been a businesslike proceeding; such tender and demand, after he had deprived himself of the means of responding, would have seemed fruitless and nugatory. As a general rule such nugatory acts need not be performed (5 Duer, 62; 1 Bosw., 558; 3 Barb., 612 ; 50 Id., 79 ; 40 N. Y., 584).
But prior to our present system of legal procedure, when actions of trover and replevin might have been brought, and when the plaintiff’s election to pursue such remedies depended upon his right to the possession of the property converted, or sought to be reclaimed, such tender would have performed an important office; it would have 'ministered to the right of possession. Not that the law, even then, was chargeable with undue solicitude as to the observance of mere forms, or the performance of nugatory acts as a prerequisite to an action, but that one by whom money must have been paid before he could become entitled to recover the property or its value, should not elect to adopt those forms of action without first discharging his own obligation, and giving the other party an opportunity of receiving payment and making restoration.
In cases of bailment this was the more proper, as, after much contention, it was seen that repledging the property, or parting with its possession by the bailee, in good faith, for an amount not greater than that for which it had been pledged to him, reasonably tended *434 to promote the convenience of business, and should not work an utter dissolution of the original contract.
But a due regard to the rights of the parties, and to the principle invoked in su.ch eases, involved a distinction between the passing over of the property by the pledgee to another for an amount not greater than that for which it had been pledged in the first instance, and the case of such transfer of the property for a larger amount, or of its sale to a stranger (7 East, 7, 8).
In the one case, the rights of the original pledgor are respected ; in the other, they are disregarded, may be utterly defeated. It would be reasonable to require a tender by the pledgor in the former instance; equally reasonable to dispense with it in the latter.
But, as a remedy for an injury to the property pledged, or for the destruction or conversion of it, the old special action on the case was to be preferred. ■ As the question of an immediate right of possession was not in the way, no merely formal tender was necessary, and the plaintiff could recover damages, as an indemnity. Where the defendant, chargeable with the conversion of the property, had made advances on it to the plaintiff,- or received it of him as mere security, his claim could be allowed, and the plaintiff recover the excess of the value.
Although these forms of action, as such, have been abolished with us, it is said that the rules and principles peculiar to them, as essential elements, remain in full force. But, laying out of view the action under the Code of Procedure to recover the possession of personal property,—an action analogous to that of replevin,—it will be found that that proposition has no extended value or significance. Although it be true that those principles remain in full force, yet the most that could be said is, that if, under our present system of pleading, the complaint contain only the matters which under our former system were peculiar to a *435 declaration in an action of trover, the issue would now be tried as it would have been before the Code; and the right of possession in the plaintiff, or a tender and demand by him, would be as necessary as before. The analogy would hold in respect to other actions.
But if it were necessary to give to this case the name of some old form of action, with a view to the present application of rules and principles which would have been applied on a like state of facts before the Code, we should regard this as a special action on the case, brought to recover damages for a wrong. It is not the less an action on the case because a conversion of the property is charged, although that term was most commonly found in a pleading in trover. In either form of action a tortious act would have been charged by the use of that or some equivalent term.
None of the cases cited by the learned counsel for the respondent conflict with the general views here expressed. The cases most relied on—Donald v. Suckling (1 L. R., Q. B., 585), which was in detinue, and Halliday v. Holgate (3 L. R., Exch., 299), in trover,—have, in their results, no direct application.
But in the former case Mr. Justice Shee shows, quite clearly, that repledging or selling the securities by the pledgee for a larger sum than that for which they had been originally pledged, was a conversion, and entitled the owner to reclaim the property, divested of the lien. And in the latter case (p. 300), Blackburn, J., assisting counsel arguendo, to a correct recollection of what had been said by him in the other case, observed that the statement was “that the plaintiff may be entitled to maintain an action of tort against Simpson or the defendant for damages, if any, sustained by him, in consequence of their unauthorized dealing with the debentures.” “ The words,” he adds, “were carefully chosen, and, taken in their connection, they exclude the inference that they refer to any ac *436 tion which depends upon the right to immediate possession.”
I am not prepared to hold, either upon principle or authority, that, to maintain this action, this plaintiff should have been entitled to the possession of the bonds, or that, as a matter of pleading, a tender should have been alleged.
The question raised in this case seems to have been utterly overlooked in Markham v. Jaudon (41 N. Y., 235), in Brass v. Worth (40 Barb., 648), and in Morgan v. Jaudon (40 How. Pr., 366), analogous cases in which the unlawful conversion of the securities pledged was charged and damages claimed.
In view of the attention which this branch of the law received in those cases, that circumstances is somewhat suggestive.
But the question was raised in Clark v. Meigs, an action for an unauthorized sale of stock by the broker who had been carrying it on marginal security. That case was first before the court on demurrer to the complaint ; and Mr. Justice Robertson, on the ground that a demand of the stock, and tender of the amount due should have been alleged, sustained the demurrer (12 Abb. Pr., 267). But on appeal that decision was reversed (13 Abb. Pr., 467).
In Lewis v. Graham (4 Abb. Pr., 106), the case of a sale, without notice of the stock pledged, held, that a tender of the debt was not necessary. Mr. Justice Ingraham refers to Wilson v. Little (2 N. Y. [2 Const. ], 443), citing thus, “Mr. Justice Ruggles says the sale by the defendants before payment demanded, was, therefore, wrongful. The defendants having voluntarily put it out of their power to restore the pledge, a tender of the money borrowed would have been fruitless, and was, therefore, unnecessary. The same rule is stated in. Cortelyou v. Lansing (2 Cai. Cas., 200).”
Without further pursuing these inquiries, I am of *437 opinion that the complaint before us was sufficient. A cause of action was set forth. Under our system of pleading the allegations were sufficient to have let in the proofs necessary to enable the court or the jury, under proper directions, to determine the rights and liabilities of the parties.
Pleadings are to be liberally construed (42 N. Y., 83 ; 57 Barb., 504 ; 10 N. Y., 51).
In Scott v. Pilkington 15 Abb. Pr., 280, 285), Gould, J., says: “As to forms of action we have, under the Code, no trouble between actions on the case and those directly on contract. If the facts stated in the complaint give a right of action, the plaintiff can recover on that complaint.”
And in Butterworth v. O’Brien (24 How. Pr., 438), Mr. Justice Ingraham says: “ Under the late decisions of the court of appeals we are. not to pay any attention to forms, if we can find in the complaint any allegations which, under any view of them, may give the plaintiff a right to recover.”
It is true, as stated by the learned judge, in denying the application for a new trial, that some of the allegations in this complaint, are to an action ex contractu, others of them to an action ex delicto. It is also true that such pleading is not to be commended, is incongruous, at variance with all our notions of system, order, and arrangement in pleading. But, under the Code, must we not tolerate pleadings as objectionable as this ? If we find, in view of the contract, the advances of money, the illegal sale, the accounting—the facts, taken as a whole—that the plaintiff has suffered, must he not have judgment? If the pleader call the action one thing may we not treat it as another thing, rather than turn a party who, confessedly," upon those facts, ought to recover in some form, over to the delay and expense of a new action ?
It has been held that the pleader’s misconception *438 of the cause of action is not material if the facts warrant a recovery (10 N. Y. [6 Seld.], 56), also, that if the nature of the action be doubtful, the demand for judgment may be consulted to ascertain the action intended (11 Barb., 595), and yet again, that the defendant having answered, the demand for relief becomes immaterial (12 N. Y. [2 Kern.], 341).
This complaint closes by demanding judgment for a certain sum, and is consistent with the idea that the cause of action arose on contract. We might so regard the complaint, although a conversion was alleged, and the summons was for relief (42 N. Y., 83).
The Code has made liberal provision for enforcing the amendment and correction of pleadings; even for improving the imperfect and ill arranged statements of the facts, or making them more definite and certain, by motion at the instance of the defendant. Where those remedies are not resorted to, and on issues joined the case comes up for trial, we are to be astute in spelling out from the facts at large, or from such of them as may be pertinent, a cause of action or defense.
I am, therefore, constrained to differ from the views entertained by the learned judge when he dismissed the complaint and denied the application for a new trial; and, with the concurrence of Judge McCue, the judgment appealed from must be reversed and a new trial granted, costs to abide the event.*
Judgment reversed.

 By arrangement of counsel the judgment was entered as upon e money demand on contract.