## SCOTT *a.* PILKINGTON.

*Supreme Court, First District; General Term, June,* 1861.

INACCURATE CONCLUSIONS OF LAW.—PROMISE FOR BENEFIT OF THIRD PARTY.—ACCEPTANCE.—FORM OF COMPLAINT.—LEX LOCI CONTRACTUS.

A judgment which is proper upon the facts found by the court or referee, should not be reversed for the reason that conclusions of law on which the judgment was rendered are inaccurate.

Where a promise is made to one party for the benefit of another, the latter, though a stranger to the contract, may recover in a suit directly against the promisor, and founded on the promise.

P. left with F. a letter promising to protect and honor bills of exchange drawn by F.; the letter was intended to be shown to purchasers of such bills.

*Held,* that P., on a failure to accept, was liable to a third party who had purchased bills drawn pursuant to P.'s letter.

Under the Code no trouble arises as to the form of an action, whether on the case or directly on contract. If the facts stated in the complaint give a right of action, the plaintiff may recover on that complaint.

The statute (1 *Rev. Stat.,* 768, §§ 8–10),—making a promise in writing to accept a bill of exchange, an actual acceptance in favor of those who, on the faith of such promise, have drawn or negotiated such bill,—does not take away the common-law remedy to which the facts of any particular case may entitle a party.

Such a promise made here, though to be performed in England, is to be governed in its obligations and interpretation by the laws of this State.

Appeal from a judgment.

This action was brought by William B. Scott, Robert H. Thorn, and Richard C. W. Moore, against John and Daniel Pilkington, to recover the amount of three bills of exchange for one thousand pounds sterling each, drawn by Fleming & Alden upon the defendants, and purchased by plaintiffs, but which defendants refused to accept. The defendants, in February, 1856, delivered to Fleming & Alden the following letter:

"NEW YORK, 16th February, 1856.

"Messrs. FLEMING & ALDEN,

"94 Wall-street, New York:

"GENTLEMEN,—In reply to your communication made to me this morning, respecting your drawing exchanges upon us, I would state, that you have our authority to do so, and all such exchanges drawn upon us will be duly honored and protected. This power, however, is subject to being withdrawn at any future time. "Very truly yours,

"DANIEL PILKINGTON,

"*Of and for the firm of Pilkington Brothers,*
*Liverpool.*"

Fleming & Alden, for the purpose of more readily negotiating bills to be drawn under the above letter, showed it to the plaintiffs, and deposited it with them to be shown to any person. The plaintiffs bought the drafts on the faith of this letter. The drafts were presented for acceptance, but acceptance was refused, and they were protested. The plaintiffs claimed to recover the amount of the face of the bill, with the premium of exchange on London.

The complaint set forth the facts at length, and claimed damages for defendants' failure to accept the bills. The action was commenced before the maturity of the bills.

The cause was tried before Henry Nicoll, Esq., referee. The referee found, among other matters of fact, that the letter of February 16, 1856, was written in New York for and on behalf of the firm of Pilkington Brothers, of Liverpool, England, composed of the defendants in this action. That the said paper-writing was so made by Daniel Pilkington at the request of Fleming & Alden, for the purpose and with the intention that such paper-

writing should be exhibited to such parties as might buy the bills of exchange which might thereafter be drawn by Fleming & Alden, in New York, on the evidence of the authority of Fleming & Alden to draw such bills of exchange. The referee's conclusions of law were, 1. That the said paper-writing was a general letter of credit, operating as a promise and undertaking on the part of the defendants, to and with every person who should, upon the faith and credit of the authority in said paper-writing contained, purchase bills of exchange drawn by Fleming & Alden, on the defendants, that such bills of exchange should be accepted by the defendants. 2. That the contract in its obligations and interpretation was to be governed by the laws of the State of New York, and not by the laws of Great Britain. 3. That plaintiffs were entitled to recover, as damages by reason of defendants' breach of contract in refusing to accept such bills, the value of the bills in United States currency, at the respective times of presentation for acceptance, with interest. Judgment was entered for the plaintiffs for $18,633.37, and defendants appealed.

*John E. Develin,* for the appellants.—I. If the contract in its obligations and interpretation is to be governed by the laws of the State of New York, this action for damages for non-acceptance of the bills of exchange, was prematurely brought, and consequently not maintainable. An unconditional promise to accept a bill before it is drawn, is deemed an actual acceptance in favor of every party standing in the relation to it, which these respondents aver they occupy towards these bills, purchasers of them on the faith of this letter. (1 *Rev. Stat.,* 768, § 8.) In addition : if this action were maintainable, two recoveries might be had on these bills ; the first in this action, and the second in an action against the drawers of them, after they had matured, in the hands of other and innocent holders, against whose claim a recovery in this action would be no bar. But the respondents are not the proper parties. The statute authorizes only the party to whom the promise to accept was made, and who on the faith of it has drawn or negotiated the bill, to recover for a breach of it. (1 *Rev. Stat.,* 768, § 10.) Here the promise was made to Fleming & Alden, and the bills have never, within the meaning of the statute, been negotiated by

the respondents. (N. Y. & Virginia State Stock Bank *a.* Gibson, 5 *Duer*, 574, 584.)

II. The referee erred in his conclusion, that the contract in this case, as to its obligations and interpretation, was to be governed by the laws of this State, and not by those of Great Britain. This contract was to be performed in England, and it is a universal rule that, while the law of the place where a contract is made governs as to the form and validity of its execution as a contract, the law of the place of performance governs as to its validity, nature, obligations, and interpretation. (2 *Kent's Com.*, 459; *Story's Conf. of Laws*, §§ 280–286; Hyde *a.* Goodnow, 3 *N. Y.*, 266; Bowen *a.* Newell, 13 *Ib.*, 290; Everett *a.* Vendryes, 19 *Ib.*, 436.)

III. The referee also erred in his conclusion of law, that "said paper-writing was a general letter of credit." In this State letters of credit are recognized by the decisions of the courts, as being divided into two classes: *general* letters of credit, and *special* letters of credit. (*Edw. on Bills*, 239; Birckhead *a.* Brown, 5 *Hill*, 634; and 2 *Den.*, 375; Union Bank *a.* Coster, 3 *N. Y.*, 203.) A general letter of credit is addressed to all the world; a special letter of credit to a particular individual or firm. (*Edw. on Bills*, *supra;* Birckhead *a.* Brown, 5 *Hill*, 634; Union Bank *a.* Coster, 3 *N. Y.*, 203.) In other words, the address shows the parties to the instrument. In this case, the letter was addressed to a particular firm, and was, if a letter of credit at all, a special letter of credit. The referee nowhere found that it was given for the purpose, or with the intent, of assuring strangers, or third parties, that as between the appellants and them, bills drawn under it would be accepted. Without such assurance, parties cannot, in the legal sense of the phrase, be considered as purchasing upon the faith and credit of it. It is a well-settled rule of law, that no party except him to whom it is addressed, can avail himself of the promise contained in a special letter of credit.

*Augustus F. Smith*, for the respondents.—I. The letter of 16th February was in law a promise to and for the benefit of any person who should buy a bill upon the faith of the promise. 1. It is apparent from the letter that it was designed for third persons. Its language is, " you have our authority to do so"

(to draw), "and all such exchanges drawn upon us will be duly honored and protected." 2. It was proved as a fact upon the trial, that the letter was made that it should be exhibited to parties who should buy the bills. Even in England, where the rule is much more strict than here, this parol evidence would establish the liability of the defendants under the circumstances of this case. The authorities in this country are numerous. (Monroe *a.* Pilkington, 14 *How. Pr.*, 250; Union Bank *a.* Coster, 3 *N. Y.*, 203; Russell *a.* Wiggin, 2 *Story's C. C.*, 213; Cassell *a.* Dows, 1 *Blatchf. C. C.*, 335; Lawrason *a.* Mason, 3 *Cranch*, 492; Carnagie *a.* Morrison, 2 *Metc.*, 381; Townslie *a.* Sumrall, 2 *Pet.*, 170, 181; Boyce *a.* Edwards, 4 *Ib.*, 111.)

II. The letter, the contract in question, is to be governed by the laws of New York. (See the cases under the first point, and especially 2 *Story*, 213; 2 *Pet.*, 170, 181.; 2 *Metc.*, 381.) The general rule, is that the *lex loci contractus* governs. If the law of any other place is to govern, it must be shown that the parties contracted with reference to the law of such other place. If this contract were in writing between the parties, signed by both, by which the defendants agreed with the plaintiffs to accept bills, to be drawn by Fleming & Alden, which the plaintiffs should purchase, beyond a doubt the contract would be valid, if executed according to the laws of New York, and could be prosecuted in England, even though it had no stamp.

By the Court.*—Gould, J.—It would seem that the facts found by the referee are sufficient to give a right to the plaintiffs to recover. And it is not our duty to reverse the judgment, though the referee has not given (in his findings) an accurate statement of the legal principles that favor the recovery. He has found, as facts, that the defendants' letter to Fleming & Alden was written to enable them to show it to others, and thereby give credit to the bills drawn in conformity with it; that it was shown to the plaintiffs, and that by it they were induced to buy these bills.

Such facts make a case of a promise made to one party (Fleming & Alden), for the benefit of another (any one who might, on the faith of it, take such bill); and our books are full

---

\* Present, Clerke, P. J., Gould and Ingraham, JJ.

of cases holding that such third party, though a stranger to the actual promise, may recover in a suit directly against the promisor, and founded on the promise.

As to the form of this action, we have, under the Code, no trouble between actions on the case, and those directly on the contract. If the facts stated in the complaint give a right of action, the plaintiffs can recover on that complaint.

The statute of this State, making a promise to accept an actual acceptance, does not oust the common-law remedy to which the facts of any particular case may entitle a party. And whatever may be the laws of England on such a case, it is not necessary for us, in this case, to follow any law but our own; and so doing would affirm this judgment.

Judgment affirmed, with costs.