SCUDDER *v.* UNION NATIONAL BANK.

1. Where a bill of exchange was drawn by a party in Chicago upon a firm in St. Louis, and verbally accepted by a member of the firm then present in Chicago, — *Held,* that the validity of such acceptance was to be determined by the law of Illinois.

2. In Illinois, a parol acceptance of a bill of exchange is valid, and a parol promise to accept it is an acceptance thereof.

3. Matters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy depend upon the law of the place where the suit is brought.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This was an action of assumpsit against William H. Scudder and others, constituting the firm of Henry Ames & Co., to recover the amount of a bill of exchange. Process was served only upon Scudder, who pleaded *non-assumpsit* and several special pleas.

The statute of Illinois on which one of the pleas is based provides that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, " unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him specially authorized." .

The Missouri statute provides : —

" SECTION 1. No person within this State shall be charged as an acceptor of a bill of exchange, unless his acceptance shall be in writing, signed by himself or his lawful agent.

" SECT. 2. If such acceptance be written on a paper other than the bill, it shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, upon the faith thereof, shall have received the bill for a valuable consideration.

" SECT. 3. An unconditional promise in writing, to accept a bill before drawn, shall be deemed an actual acceptance in favor of every person to whom such written promise shall have been shown, and who, upon the faith thereof, shall have received the bill for a valuable consideration.

"Sect. 4. Every holder of a bill presenting the same for acceptance may require that the acceptance be written on the bill; and a refusal to comply with such request shall be deemed a refusal to accept, and the bill may be protested for non-acceptance.

"Sect. 5. The preceding sections shall not be construed to impair the right of any person to whom a promise to accept a bill may have been made, and who, on the faith of such promise, shall have drawn or negotiated the bill, to recover damages of the party making such promise, on his refusal to accept such bill."

The parties went to trial; and the bank offered evidence tending to establish, that for over a year prior to the seventh day of July, 1871, the firm of Henry Ames & Co. were engaged in business at St. Louis, Mo., and that Leland & Harbach, commission-merchants in Chicago, had from time to time bought lots of pork for said firm, on commission; that on the seventh day of July, 1871, the defendant Scudder, a member of said firm, came to Chicago at the request of Leland & Harbach, who were then in an embarrassed condition, owing to speculations in grain; that, on the same day, John L. Hancock delivered to Leland & Harbach 500 barrels of pork, which they had bought of him for Ames & Co., by their request and direction, at $16.25 per barrel, in May, to be delivered in July, of which purchase said Ames & Co. had been duly advised; that, in payment of said pork, Leland & Harbach gave Hancock their check on the Union National Bank of Chicago for $8,031; and that the charges for inspection and commissions made the total cost of the pork $8,125.

That Leland & Harbach, on the same day, shipped the pork to Ames & Co. at St. Louis, Mo., who received and sold it; and that, at the time the bill was drawn, Scudder, who was then present in the office of Leland & Harbach, consented to the receipt of said pork, and verbally authorized them to draw on Ames & Co. for the amount due therefor.

That a bill of exchange in words and figures following —

"$8,125.00.                                    "Chicago, July 7, 1871.

"Pay to the order of Union National Bank eight thousand one hundred and twenty-five dollars, value received, and charge to account of                                    "Leland & Harbach.

"To Messrs. Henry Ames & Co., St. Louis, Mo."

—— was on said seventh day of July, 1871, presented for discount at the Union National Bank by Leland & Harbach's clerk; and the vice-president of the bank declined to give Leland & Harbach credit for the bill without a bill of lading or other security. That the clerk then returned to Leland & Harbach's office, and stated the bank's objections, Scudder being present; and, in the presence and hearing of said defendant, Scudder, the clerk was told by Leland or Harbach to return to the bank, and tell the vice-president that Scudder, one of the firm of Ames & Co., was then in Chicago, and had authorized the drawing of said draft, and that it was drawn against 500 barrels of pork that day bought by Leland & Harbach for Henry Ames & Co., and duly shipped to them. That the clerk returned, and made the statement as directed; and the vice-president, upon the faith of such statement that the bill was authorized by defendants, discounted said bill, the proceeds were passed to Leland & Harbach's credit, and the check given by them to Hancock in payment of said pork was paid out of the proceeds of said draft.

The bank then offered in evidence the said bill of exchange with a notarial certificate of protest, showing that the bill was presented to Henry Ames & Co. for payment July 8, 1871, and duly protested for non-payment.

It was admitted that said Ames & Co. had never paid said bill.

The court charged the jury. To the following parts thereof Scudder excepted:——

"If you find from the evidence that Mr. Scudder, one of the defendants, authorized the drawing of the draft in question, and authorized the clerk, George H. Harbach, to so state to the vice-president of the bank, and that the said draft was discounted by the bank upon the faith of such statement, such conduct on the part of Mr. Scudder may be considered by you as evidence of an implied promise by the defendants to pay the draft : and it is not necessary for that purpose that Mr. Scudder should have expressly sent word to the bank if such statements were made in his hearing and presence, and no objections made to them by him; that is to say, if he stood by and allowed either Leland or Harbach to send such word to the bank without dissenting therefrom. If you find by a fair preponderance of the testimony that Mr. Scudder knew the pork had been delivered to Leland & Harbach at the time the draft was

drawn, and acquiesced in the drawing of the draft, and acquiesced in the word sent to the bank that he had authorized it, you may from such facts find an implied promise by the defendants to pay the draft.  It was not necessary that Scudder should go to the bank and state that he had authorized the draft, if you are satisfied that he allowed such statements to be made by the messenger.

'It being an admitted fact that the defendants have the proceeds of the pork against which this draft was drawn, such fact may also be considered by you as an additional circumstance tending to show a promise on the part of the defendants to pay the draft.

"The real issue in this case is, whether Mr. Scudder authorized the drawing of the draft in question, and expressly or impliedly promised to pay it."

The jury found a verdict in favor of the bank; and the court, overruling a motion for a new trial, rendered judgment. Scudder sued out this writ of error.

*Mr. John H. Thompson* for plaintiff in error cited *Maggs* v. *Ames*, 4 Bing. 470 ; 2 Par. on Notes and Bills, 324 *et seq.*; Story's Confl. of Laws, sects. 280, 318; *Worcester Bank* v. *Wells et al.*, 8 Met. 107; *Hunt* v. *Standart*, 15 Ind. 33; *Boyce* v. *Edwards*, 4 Pet. 123; *Frazier* v. *Warfield*, 9 Sm. & M. 220; *Springer* v. *Foster*, 2 Story, 387.

*Mr. Melville W. Fuller*, contra.

An acceptance of a bill need not be in writing, except when so required by statutory provisions.  1 Par. on Notes and Bills, 285.

In Illinois it is well settled that a parol promise to pay an existing bill is valid (*Jones* v. *C. Bluff's Bank*, 34 Ill. 319), and a parol promise to pay an existing or non-existing bill is a virtual acceptance thereof.  *Nelson* v. *First Nat. Bank*, 48 id. 39; *Mason* v. *Dousay*, 35 id. 424; *Jones* v. *Bank*, 34 id. 319.

MR. JUSTICE HUNT delivered the opinion of the court.

It is not necessary to examine the question, whether a denial of the motion to set aside the summons can be presented as a ground of error on this hearing.  The facts are so clearly against the motion, that the question does not arise.

Nor does it become necessary to examine the question of pleading, which is so elaborately spread out in the record.  The

only serious question in the case is presented upon the objection to the admission of evidence and to the charge of the judge.

Upon the merits, the case is this : The plaintiff below sought to recover from the firm of Henry Ames & Co., of St. Louis, Mo., the amount of a bill of exchange, of which the following is a copy; viz.: —

"$8,125.00.                "CHICAGO, July 7, 1871.

"Pay to the order of Union National Bank eight thousand one hundred and twenty-five dollars, value received, and charge to account of            "LELAND & HARBACH.

"To Messrs. Henry Ames & Co., St. Louis, Mo."

By the direction of Ames & Co., Leland & Harbach had bought for them, and on the seventh day of July, 1871, shipped to them at St. Louis, 500 barrels of pork, and gave their check on the Union bank to Hancock, the seller of the same, for $8,000.

Leland & Harbach then drew the bill in question, and sent the same by their clerk to the Union Bank (the plaintiff below) to be placed to their credit. The bank declined to receive the bill, unless accompanied by the bill of lading or other security. The clerk returned, and reported accordingly to Leland & Harbach. One of the firm then directed the clerk to return to the bank, and say that Mr. Scudder, one of the firm of Ames & Co (the drawees), was then in Chicago, and had authorized the drawing of the draft; that it was drawn against 500 barrels of pork that day bought by Leland & Harbach for them, and duly shipped to them. The clerk returned to the bank, and made this statement to its vice-president; who thereupon, on the faith of the statement that the bill was authorized by the defendants, discounted the same, and the proceeds were placed to the credit of Leland & Harbach. Out of the proceeds the check given to Hancock for the pork was paid by the bank.

The direction to inform the bank that Mr. Scudder was in Chicago and had authorized the drawing of the draft was made in the presence and in the hearing of Scudder, and without objection by him.

The point was raised in various forms upon the admission of evidence, and by the charge of the judge, whether, upon this

state of facts, the firm of Ames & Co., the defendants, were liable to the bank for the amount of the bill. The jury, under the charge of the judge, held them to be liable; and it is from the judgment entered upon that verdict that the present writ of error is brought.

The question is discussed in the appellant's brief, and properly, as if the direction to the clerk had been given by Scudder in person. The jury were authorized to consider the direction in his name, in his presence and hearing, without objection by him, as made by himself.

The objection relied on is, that the transaction amounted at most to a parol promise to accept a bill of exchange then in existence. It is insisted that such a promise does not bind the defendants.

The suit to recover upon the alleged acceptance, or upon the refusal to accept, being in the State of Illinois, and the contract having been made in that State, the judgment is to be given according to the law of that State. The law of the expected place of performance, should there be a difference, yields to the *lex fori* and the *lex loci contractus.*

In Wheaton on Conflict of Laws, sect. 401 *p*, the rule is thus laid down: —

" Obligations, in respect to the mode of their solemnization, are subject to the rule *locus regit actum;* in respect to their interpretation, to the *lex loci contractus;* in respect to the mode of their performance, to the law of the place of their performance. But the *lex fori* determines when and how such laws, when foreign, are to be adopted, and, in all cases not specified above, supplies the applicatory law."

*Miller* v. *Tiffany*, 1 Wall. 310; *Chapman* v. *Robertson*, 6 Paige, 634; *Andrews* v. *Pond*, 13 Pet. 78; *Lamesse* v. *Baker*, 3 Wheat. 147; *Adams* v. *Robertson*, 37 Ill. 59; *Ferguson* v. *Fuffe*, 8 C. & F. 121; *Bain* v. *Whitehaven and Furness Junction Ry. Co.*, 3 H. L. Cas. 1; *Scott* v. *Pilkinton*, 15 Abb. Pr. 280; Story, Confl. Laws, 203; 10 Wheat. 383.

The rule is often laid down, that the law of the place of performance governs the contract.

Mr. Parsons, in his " Treatise on Notes and Bills," uses this language: " If a note or bill be made payable in a particular

place, it is to be treated as if made there, without reference to the place at which it is written or signed or dated." · P. 324.

For the purposes of payment, and the incidents of payment, this is a sound proposition. Thus the bill in question is directed to parties residing in St. Louis, Mo., and contains no statement whether it is payable on time or at sight. It is, in law, a sight draft. Whether a sight draft is payable immediately upon presentation, or whether days of grace are allowed, and to what extent, is differently held in different States. The law of Missouri, where this draft is payable, determines that question in the present instance.

The time, manner, and circumstances of presentation for acceptance or protest, the rate of interest when this is not specified in the bill (*Young* v. *Harris*, 14 B. Mon. 556; *Parry* v. *Ainsworth*, 22 Barb. 118), are points connected with the payment of the bill; and are also instances to illustrate the meaning· of the rule, that the place of performance governs the bill.

، The same author, however, lays down the rule, that the place of making the contract governs as to the formalities necessary to the validity of the contract. P. 317. Thus, whether a contract shall be in writing, or may be made by parol, is a formality to be determined by the law of the place where it is made. If valid there, the contract is binding, although the law of the place of performance may require the contract to be in writing. *Dacosta* v. *Hatch*, 4 Zab. 319.

So when a note was indorsed in New York, although drawn and made payable in France, the indorsee may recover against the payee and indorser upon a failure to accept, although by the laws of France such suit cannot be maintained until after default in payment. *Aymar* v. *Shelden*, 12 Wend. 439.

·So if a note, payable in New York, be given in the State of Illinois for money there lent, reserving ten per cent interest, which is legal in that State, the note is valid, although but seven per cent interest is allowed by the laws of the former State. *Miller* v. *Tiffany*, 1 Wall. 310; *Depeau* v. *Humphry*, 20 How. 1; *Chapman* v. *Robertson*, 6 Paige, 634; *Andrews* v. *Pond*, 13 Pet. 65.

. Matters bearing upon the execution, the interpretation, and

the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought.

A careful examination of the well-considered decisions of this country and of England will sustain these positions.

There is no statute of the State of Illinois that requires an acceptance of a bill of exchange to be in writing, or that prohibits a parol promise to accept a bill of exchange: on the contrary, a parol acceptance and a parol promise to accept are valid in that State, and the decisions of its highest court hold that a parol promise to accept a bill is an acceptance thereof. If this be so, no question of jurisdiction or of conflict of laws arises. The contract to accept was not only made in Illinois, but the bill was then and there actually accepted in Illinois, as perfectly as if Mr. Scudder had written an acceptance across its face, and signed thereto the name of his firm. The contract to accept the bill was not to be performed in Missouri. It had already, by the promise, been performed in Illinois. The contract to pay was, indeed, to be performed in Missouri; but that was a different contract from that of acceptance. *Nelson* v. *First Nat. Bank*, 48 Ill. 39; *Mason* v. *Dousay*, 35 id. 424; *Jones* v. *Bank*, 34 id. 319.

Unless forbidden by statute, it is the rule of law generally, that a promise to accept an existing bill is an acceptance thereof, whether the promise be in writing or by parol. *Wynne* v. *Raikes*, 5 East, 514; *Bank of Ireland* v. *Archer*, 11 M. & W. 383; *How* v. *Loring*, 24 Pick. 254; *Ward* v. *Allen*, 2 Met. 53; *Bank* v. *Woodruff*, 34 Vt. 92; *Spalding* v. *Andrews*, 12 Wright, 411; *Williams* v. *Winans*, 2 Green (N. J.), 309; *Storer* v. *Logan*, 9 Mass. 56; Byles on Bills, sect. 149; *Barney* v. *Withington*, 37 N. Y. 112. See the Illinois cases cited, *supra*.

Says Lord Ellenborough, in the first of these cases, " A promise to accept an existing bill is an acceptance. A promise to pay it is also an acceptance. A promise, therefore, to do the one or the other, — i.e., to accept or certainly pay, — cannot be less than an acceptance."

In *Williams* v. *Winans*, Hornblower, C. J., says, "The first question is, whether a parol acceptance of a bill will bind the acceptor; and of this there is at this day no room to doubt. The defendant was informed of the sale, and that his son had drawn an order on him for $125; to which he answered, it was all right. He afterwards found the interest partly paid, and the evidence of payment indorsed upon it in the handwriting of the defendant. These circumstances were proper and legal evidence from which the jury might infer an acceptance."

It is a sound principle of morality, which is sustained by well-considered decisions, that one who promises another, either in writing or by parol, that he will accept a particular bill of exchange, and thereby induces him to advance his money upon such bill, in reliance upon his promise, shall be held to make good his promise. The party advances his money upon an original promise, upon a valuable consideration; and the promisor is, upon principle, bound to carry out his undertaking. Whether it shall be held to be an acceptance, or whether he shall be subjected in damages for a breach of his promise to accept, or whether he shall be held to be estopped from impeaching his word, is a matter of form merely. The result in either event is to compel the promisor to pay the amount of the bill with interest. *Townley* v. *Sumdel*, 2 Pet. 170; *Boyce* v. *Edwards*, 4 id. 111; *Goodrich* v. *Gordon*, 15 Johns. 6; *Scott* v. *Pilkinton*, 15 Abb. Pr. 280; *Ontario Bank* v. *Worthington*, 12 Wend. 593; *Bissell* v. *Lewis*, 4 Mich. 450; *Williams* v. *Winans*, *supra.*

These principles settle the present case against the appellants.

It certainly does not aid their case, that after assuring the bank, through the message of Leland & Harbach, that the draft was drawn against produce that day shipped to the drawees, and that it was drawn by the authority of the firm (while, in fact, the produce was shipped to and received and sold by them), and that the bank in reliance upon this assurance discounted the bill, Mr. Scudder should at once have telegraphed his firm in St. Louis to delay payment of the draft, and, by a subsequent telegram, should have directed them not to pay it.

*The judgment must be affirmed.*