ERNEST HARTMANN, Appellant, v. LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, January 21, 1890.

1. **Common Carriers :** CESSATION OF LIABILITY AS CARRIER. When goods are, pursuant to the directions of the consignee, stored in a warehouse of the carrier, to remain there until they should be called for by a transfer company, employed by the plaintiff to deliver the goods to him, the liability of the carrier is reduced to that of an ordinary bailee, and, in case of damage to the goods by fire while they are in the warehouse, the carrier is not liable in the absence of negligence on its part.

2. ———: CONFLICT OF LAWS. When a contract of affreightment is made in one state for the transportation of goods from a point therein to a place in another state, the validity and effect of the contract, and of provisions therein limiting the common-law obligations of the carrier, is determined by the law of the place of contract.

3. ———: ———. If a bill of lading be given in one state for the transportation of goods from a point in that state to a place in another state, and the *lex loci contractus* is that a provision, contained in the bill of lading and limiting the common-law liability

of the carrier, is illegal, unless the shipper knew of and assented to such provision, and that the mere acceptance of the bill of lading is not, of itself, evidence of such consent, the sufficiency of the assent is a matter appertaining to the validity and effect of the contract, and is to be adjudged in a foreign tribunal in accordance with the law of the place of contract, and not the law of the forum.

4. Evidence: LAWS OF SISTER STATES. The law of one of the states of the union may be proven by printed statute books, purporting to have been printed by the authority of such state, and by decisions of the appellate courts of such state.

5. Law and Fact: FOREIGN LAWS. The law of a foreign state must be proven as a matter of fact.

6. Instructions: SINGLING OUT TESTIMONY OF WITNESS. When there is but one witness who testifies to a certain fact, and a party is entitled to have the existence of the fact, so testified to, submitted to the jury by instruction, the mere reference, in such an instruction, to the name of the witness, as a method of the identification of his evidence, does not render the instruction erroneous, so as to justify the refusal of it.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*John B. Roeder* and *E. P. Johnson*, for the appellant.

The shipper may sue *ex delicto*, as did plaintiff, and when he showed delivery of the goods to defendant and failure to receive, and a loss of them, he made out a *prima facie* case, and it was for defendant to set up a special contract, prove it and bring himself within the terms of it under the laws of Illinois. *Davis v. Railroad*, 89 Mo. 350; *Clark v. Railroad*, 64 Mo. 446; Lawson on Carriers, sec. 245. The burden of proof being on defendant, the instructions numbers one and three asked by plaintiff and refused, so instructing the jury, should have been given. *Carson v. Porter*, 22 Mo. App. 134. The testimony of agent Sample in

regard to an order from plaintiff, as to the manner of forwarding shipments of goods, shows that he was utterly incompetent to testify, as he had no knowledge of plaintiff's handwriting, and no other means of ascertaining the signature to be his. It is claimed by the defendant that plaintiff had seen many of defendant's bills of lading, and doubtless it will be argued that he might have known what was in them, but plaintiff shows that he did not know and the burden was on the defendant to show that plaintiff not only knew, but also assented to, its terms.

*Gibson, Bond & Gibson,* for the respondent.

It is the law of this state that a party is bound by the terms of a bill of lading and it is immaterial whether he in fact either read or knew them, and the question whether he assented to such terms is not open to question in the absence of fraud. *Snider v. Express Co.,* 63 Mo. 376; *O'Bryan v. Kinney,* 74 Mo. 125; *Railroad v. Cleary,* 77 Mo. 634. Consequently under the law of this state, the provision of the bill of lading, exempting defendant from loss by fire would have been conclusive on plaintiff. The case was, however, tried on the basis of the law of Illinois, and the jury were instructed that the provision in the bill of lading did not relieve the defendant from liability " unless the plaintiff knew and consented thereto." The verdict of the jury determines the question of fact that plaintiff did have knowledge of and assent to the provisions of the bill of lading. The verdict on this point is amply sustained by the evidence. The plaintiff, as shown in our statement, had been in business and making shipments over the defendant's road and receiving these bills of lading since 1871. Plaintiff's counsel contends there was no legal or competent evidence that the plaintiff had ever signed or given any written direction to Sample

(defendant's local freight agent at East St. Louis) to deliver goods to the transfer company. The proof was that the written instruction had been burned up in the depot and for this reason absolute and irrefragable proof of its authenticity could not be had. But the evidence as to its genuineness was sufficient to satisfy any reasonable person.

THOMPSON, J., delivered the opinion of the court.

This was an action to enforce a common-law liability of the defendant as a common carrier, for failing to deliver to the plaintiff certain goods which it had received from an agent of the plaintiff at Mascoutah in the state of Illinois, to be shipped to the plaintiff at St. Louis in this state. The answer is a general denial, and also a paragraph, setting up that there was a special contract between the plaintiff and the defendant, under which the goods were shipped, and whereby it was agreed that the defendant should be exonerated from liability in the case of a loss of the goods by fire, and alleging that the goods were lost by an accidental fire in the defendant's warehouse at East St. Louis, Illinois. The answer also pleaded that the plaintiff gave a special direction to the defendant, that the goods were to be delivered at East St. Louis in the state of Illinois to a corporation called the St. Louis Transfer Company, to be hauled from East St. Louis to the storehouse of the plaintiff in St. Louis; that in consequence of this special direction the goods were stored by the defendant in its warehouse in East St. Louis and were there, before being taken out by the transfer company, consumed by an accidental fire and without negligence on the part of the defendant.

The case was tried before a jury, and there was a verdict and judgment for the defendant. The evidence adduced at the trial showed that the goods in question were purchased by an agent of the plaintiff, and were

delivered by him to the agent of the defendant at
Mascoutah in the state of Illinois for shipment to the
plaintiffs at St. Louis in this state, and that the defend-
ant's agent delivered to plaintiff's agent a bill of lading
which the latter transmitted to the plaintiff; that the
goods went forward to East St. Louis in Illinois, and
arrived there on the twenty-third of January, 1886, and
that, on that day, they were transferred from the
defendant's car, in which they had come, to the defend-
ant's warehouse in East St. Louis, where they remained
until the twenty-fifth of the same month, when they
were destroyed by an accidental fire. There was no
evidence that the fire was the result of negligence.

It thus appears that by the terms of the original
contract of shipment the destination of the goods was
St. Louis in Missouri, and that the goods were destroyed
by fire while in transit at East St. Louis, Illinois. By
the principles of the common law, presumed in the
absence of evidence to the contrary, to be in force in the
state of Illinois, a common carrier is liable for the loss
of goods entrusted to him for carriage, except where
the loss occurs through the act of God or the public
enemy; he is consequently liable at common law for
the loss of the goods while in his hands from an
accidental fire. This is not questioned.

The questions which were really contested at the
trial were, therefore, whether there was a special con-
tract, as set up in the answer, between the plaintiff and
the defendant limiting this common-law liability of the
defendant, so as to exonerate it from liability in case of
the destruction of the goods in transit by an accidental
fire; secondly, whether the plaintiff had given to the
defendant a direction changing the terms of the original
contract of shipment, by which it became the duty of
the defendant to deliver the goods at East St. Louis to
the St. Louis Transfer Company, to be by them carried
to the plaintiff in their wagons, instead of forwarding

them to St. Louis for delivery there by such connecting carrier as the defendant might apppoint. If there was such a direction, it is not questioned that it was in the nature of a supplementary contract, and that if the defendant, by reason of acting in conformity with it, placed the goods in its warehouse until they could be taken by the St. Louis Transfer Company in its wagons for delivery to the plaintiff at St. Louis, and if, while so in its warehouse, they were destroyed by an accidental fire and without negligence on the part of the defendant, the defendant is not liable for their value ; for, in such a case, the transit would have been at an end, and the liability of the defendant would have been reduced to that of an ordinary bailee for hire.

We say that we do not understand that this principle is questioned, but if it is questioned, we add that we are of opinion, as matter of law, that if such a direction was given, the transfer company thereby was made by the plaintiff his agent to receive the goods at East St. Louis ; that the defendant, in obeying the direction, had no further duty to perform than to deliver the goods to the transfer company, and that, when it unloaded the goods from its car and placed them in its warehouse, there to remain until the transfer company should be ready to receive them, its liability as a carrier ended and its liability as a bailee commenced.

The contract of affreightment, it is to be remembered, was made in the state of Illinois, and was to be chiefly performed in that state. Its validity and interpretation are, therefore, to be governed by the law of Illinois. Of this proposition there is no doubt. The rule is, that matters bearing upon the execution, interpretation, and validity of a contract, are to be determined by the law of the place where it was made. *Scudder v. Bank*, 91 U. S. 406; *Aymar v. Sheldon*, 12 Wend. (N. Y.) 439; s. c., 27 Am. Dec. 137, and note 27 Am. Dec. 141, where numerous cases to this proposition are cited. And while it is a rule that, where a

contract is made in one state and is to be wholly performed in another state, it is governed, in respect of matters pertaining to its discharge or performance, by the law of the place of performance,—yet this rule does not apply to interstate contracts of carriage, so as to make the contract governed in respect of its validity, by the law of the state in which the final act of performance is to take place. Thus, where a contract of affreightment was made in Iowa for the transportation of cattle by rail from a place in Iowa to a place in Illinois and for their delivery at the latter place, the contract was governed by the law of Iowa, since it was made, and was partly to be performed, within that state. *McDaniel v. Railroad*, 24 Ia. 412. So where a contract of affreightment was made in Connecticut, and the ultimate place of delivery of the goods was in Iowa, and the goods were lost in transit in Illinois, it was held that the liability of the transportation company was governed by the law of Connecticut in respect of a provision in the contract limiting its liability. *Talbott v. Trans. Co.*, 41 Ia. 247; s. c., 20 Am. Rep. 589. Again, where the contract of affreightment was made in New Hampshire, and the ultimate place of delivery of the goods was in Massachusetts, and the goods were lost at the place of delivery in Massachusetts, the supreme court of New Hampshire, refusing to follow a decision of the supreme court of Massachusetts, held that the liability of the railway company was to be governed by the law of New Hampshire, and that a clause in the contract of affreightment, by which it undertook to restrict its common-law liability, was not a good defense, although it would have been a good defense under the law of Massachusetts. *Moses v. Railroad*, 32 N. H. 523; s. c., 64 Am. Dec. 381. In *Faulkner v. Hart* (82 N. Y. 413; s. c., 37 Am. Rep. 574), the goods were shipped from a place in the state of New York, to be delivered to a consignee at Boston, Massachusetts. They were lost by fire at

Boston, under such circumstances that, by the law of Massachusetts, the defendant would not have been liable. But the New York court, holding that the case was governed by the law of New York, sustained the plaintiff's action for the value of the goods. In this last case the court also advanced the federal doctrine that this, being a commercial question, is governed by general principles of jurisprudence, which doctrine we understand has not yet obtained a foothold in the courts of this state. It is not necessary, for the purposes of the present case, for us to go as far as these two last cases go, because here the loss did not take place in Missouri, which was the final place of delivery according to the terms of the contract of affreightment. ·

But, as an additional reason for holding that this case is governed by the law of Illinois, we may recur to another rule of private international law, which is, that where a contract is to be performed partly in one country and partly in another country, each portion is to be interpreted in respect of questions relating to performance, according to the laws of the country where it is to be performed. *Pope v. Nickerson*, 3 Story (U. S.) 474, 485; *Pomeroy v. Ainsworth*, 22 Barb. 118, 128.

But there is still another view, which makes it clearer that we must hold that the contract, which the defendant sets up in its answer, is governed entirely by the law of Illinois. As the defendant pleads the contract, it is dual in its character; first, a contract of affreightment which names the final place of delivery of the goods as St. Louis, in Missouri; secondly, a supplementary contract which changes the place of final delivery from St. Louis, in Missouri, to East St. Louis in Illinois,—at which latter place the goods were destroyed by fire in the defendant's warehouse. The contract, as pleaded by the defendant, was, therefore, not only made in the state of Illinois, but it was to be

wholly performed in that state. In respect of all questions which may arise under it, except those pertaining to the remedy, it is, therefore, to be governed by the law of Illinois under the well-known rule that, where a contract is made in a foreign state, to be performed there, it is to be construed according to the laws of that state. *Stix v. Mathews*, 63 Mo. 371; *Roach v. Type Foundry*, 21 Mo. App. 118.

In any view which we may take of the question, it is, therefore, clear that the validity and interpretation of the contract of affreightment, which the defendant sets up in its answer, is governed by the laws of Illinois.

That law was put in evidence by the plaintiff, in the form of a section of the general statutes of that state, and also in the form of three decisions of the appellate tribunals of that state. Both of these instruments of evidence were competent, under the statutes of this state, to prove the law of Illinois upon the question in issue. By section 4831 of the present Revised Statutes of this state, "the printed statute books of sister states and the several territories of the United States, purporting to be printed by the authority of such states or territories, shall be evidence of the legislative acts of such states or territories." The statute of Illinois was therefore properly admitted in evidence. *State v. Pagels*, 92 Mo. 301. By the terms of section 4882 of the same statutes, "the printed books of cases adjudged in the courts of a sister state may be admitted as evidence of the unwritten or common law of such states." The reports of decisions of the supreme and appellate courts of Illinois were, therefore, properly admitted in evidence, in so far as they were relevant to the issues on trial.

It is true that we may know, as a matter of general learning, that another clause of the statutes of Illinois (Hurd's Ill. Stat. 1883, page 342) is to the effect that the reasons given by the appellate courts of that state

assent, is to be determined by the law of Missouri instead of the law of Illinois. We have met with a decision of the supreme judicial court of Massachusetts which is quite in point, to the effect that this question is to be determined by the law of Missouri. In that case goods were shipped from a place in Illinois to be delivered at a place in Massachusetts. They were destroyed by fire, while yet in the state of Illinois, in the hands of the transportation company. There was in the contract of affreightment, as in the case before us, a clause exonerating the carrier from liability in the case of a loss by fire. The plaintiff appealed to the rule of the law of Illinois, that the mere fact of the acceptance by the shipper of a contract of affreightment, containing such a stipulation, is not evidence of assent by him to its terms. By the law of Massachusetts (*Grace v. Adams*, 100 Mass. 505), as by the law of Missouri (*Snider v. Express Co.*, 63 Mo. 376; *O'Bryan v. Kinney*, 74 Mo. 125; *St. Louis, etc., Railway Co. v. Cleary*, 77 Mo. 634), the reception by the shipper of a bill of lading containing such stipulations was evidence of his assent to them. There seems to have been in that case, as in this, no affirmative evidence other than the acceptance of the bill of lading of the shipper's assent to these stipulations. The question, therefore, was whether the particular stipulation was binding upon the plaintiff according to the law of Massachusetts, or whether it was no part of the contract, according to the law of Illinois. The Massachusetts court held that the question was to be determined by the law of Massachusetts, and that the stipulation was, therefore, binding. The court proceeded upon the view chat the question did not relate to the validity or interpretation of the contract, so as to be determinable by the rule of *lex loci contractus*, but that it related to the *remedy*, and was, therefore, to be determined by the rule of the forum. In other words, the court treated it as a mere rule of

evidence or procedure pertaining to the remedy upon a contract.

While the decisions of that state are entitled to great respect, we cannot assent to the soundness of this conclusion. The rule that matters pertaining to the remedy are governed by the forum always assumes that there is a contract upon which a remedy is sought. It cannot be properly appealed to, to determine the question of contract or no contract. The question for decision in that case, as in the case before us, was whether a certain stipulation in an instrument of writing was a binding contract.

The governing principle by which to determine that question was, not the rules of procedure of the forum, but a rule of universal application, laid down by Mr. Justice STORY in the statement that all the formalities, proofs or authentications of contracts, which are required by the *lex loci*, are indispensable to their validity everywhere else. Story, Conflict of Laws, section 260. The same rule is laid down by another eminent writer on private international law, thus : "A contract, so far as concerns its formal making, is to be determined by the place where it is solemnized, unless the *lex situs* of the property disposed of otherwise requires." Wharton Conflict of Laws, sec. 401. The courts have gone so far as to hold that, although the parties intended that a certain instrument should be a contract between them, yet if the law of the place where it was made required it to be stamped, and it was not stamped, it would be void in the place where the remedy upon it was sought. *Alves v. Hodgson,* 7 T. R. 241; *Clegg v. Levy,* 3 Camp. 166; *Satterthwaite v. Doughty,* Busbee L. [N. C.] 314. But the rule cannot be made plainer by illustrations than it can by a mere statement of it. Many cases illustrating the rule are cited by Story and Wharton in support of their respective statements of it. The rule must of necessity apply to such a contract as the one

before us; otherwise we should be involved in the solecism of holding that a piece of paper containing a stipulation, of no validity in the place where it was executed and delivered and where the general engagement evidenced by it was to be chiefly performed, becomes a contract in some other jurisdiction in which an action may chance to be brought upon it. The inconvenience of such a rule, as applicable to the facts before us, would be that a shipper in Illinois, accepting a bill of lading containing such a stipulation, must determine whether, by accepting it, he does not draw himself into a disadvantageous contract, not according to the law where the parties are when they make the contract, but according to the law of Missouri or Massachusetts or some other foreign jurisdiction where the contract may possibly become the subject of an action.

Tested by the rules thus proved, the first inquiry is, whether there was evidence at the trial of this cause tending to show that the plaintiff had ever seen or assented to the special conditions limiting the liability of the defendant in case of accidental loss by fire, which were printed upon the bill of lading which the plaintiff's agent received from the defendant upon delivering the goods to it for shipment. There is no evidence whatever that either the plaintiff's agent, who shipped the goods and received the bill of lading, or the plaintiff himself, or any one authorized to act for him, ever assented to this stipulation *ex animo.* There is no evidence in the case that the agent of the plaintiff, who received the bill of lading, ever read the stipulation or had any knowledge of it, or gave any assent to it. There is no evidence whatever that the plaintiff in St. Louis, to whom it was forwarded by his agent, ever read it or assented to it, but there is that they did not. The plaintiff does, however, admit that he had seen many bills of lading of the defendant, and the evidence

of the defendant, not contradicted, was to the effect that this was its regular form of bill of lading which it had long used. There was, however, no evidence that the plaintiff's agent, who delivered the goods to the defendant, and with whom, if with any one, the special contract of shipment was made, had such knowledge of the special stipulations contained in the printed portions of the bills of lading in use by the defendant. As the contract was made with an agent of the plaintiff, at a distance from his place of business, the mere fact that the plaintiff had seen many bills of lading of the defendant, and that such bills of lading contained similar stipulations, would be no evidence tending to show that, in making this contract through his agent at a distant place, the plaintiff knew of and assented to these stipulations.

The plaintiff was therefore entitled to the following instructions, which he requested and which the court refused to give:

"1. The verdict must be for the plaintiff, unless the jury believe from the evidence that the plaintiff agreed to accept the goods in controversy at East St. Louis, Illinois."

In other words, there being no evidence tending to show the special contract set up by the defendant, its liability rests as at common law, and unless that liability was changed by the fact of having received from the plaintiff the special direction, which it pleaded, to stop the goods at East St. Louis and deliver them to the St. Louis Transfer Company, to be by that company carried to the plaintiff in St. Louis,—it must be held liable. Upon the question, whether the plaintiff had ever given such a special direction, the evidence—to state the case most strongly for the defendant—was conflicting. Such evidence, as there was in behalf of the defendant on the point, was furnished by the testimony of Mr. Sample, the defendant's agent at East St. Louis. That witness

testified that, in the fire in which the goods were lost, a great number of papers, embracing contracts with shippers, were also lost; that, among these papers, was a letter written by the plaintiff to the defendant, delivered to the defendant by the St. Louis Transfer Company, the substance of which, as near as the witness could recollect it, was as follows :

"*To the agent of the Louisville & Nashville Railway Company in East St. Louis:*

"You are hereby instructed to deliver to the St. Louis Transfer Company all less than carload shipments consigned to us.

(Signed.)              E. HARTMANN & Co."

The witness could not testify from his own knowledge that the signature to that letter was the signature of Mr. Hartmann, or of any one entitled to sign it for the plaintiff.  He confided in its authenticity from the fact that it was delivered to him by the transfer company. This, of itself, would fall short of showing that any such direction was given; but, outside of this, the evidence for the defendant tended to show that the direction had been acted under by the defendant for some time; that is to say that, under it, the defendant had for a considerable time been in the habit of delivering at East St. Louis to the St. Louis Transfer Company, for conveyance to the plaintiff in St. Louis, goods which they had received consigned to the plaintiff at St. Louis, and not at East St. Louis.  On the other hand, the testimony adduced on this point by the plaintiff was to the effect that no such direction had ever been given by him, but that he had given a direction to the defendant in respect of goods consigned to him at East St. Louis, but not at St. Louis, to deliver such goods to the transfer company for conveyance to St. Louis.  The defendant's contention of fact on this point is supported in the statement of the defendant's witness, Mr. Sample, to

the effect that, if goods consigned to the plaintiff at East St. Louis had been forwarded by the Wiggins Ferry Company, or by the Bridge & Tunnel Company to the Union Depot in St. Louis, there would have been this additional charge for forwarding, and then the plaintiff would have been obliged to get the goods at the Union Depot and transfer them by wagons to his place of business for distribution, which would make the cost more than to send the wagons of the transfer company to get them from East St. Louis.

We assume, then, that there was here a disputed question of fact whether this special direction had ever been given by the plaintiff to the defendant. If such a direction had been given, it operated in the present case, so to speak, as a supplementary contract changing the terms of the original contract. Whether such a supplementary contract was made was of course matter of defense which the defendant had specially pleaded, the burden of showing which rested on the defendant. Such being the case, the plaintiff requested and the court refused the following instruction : " The burden is on the defendant to show that plaintiff gave directions, such as witness Sample testified to, in reference to plaintiff's consent to receive at East St. Louis all small shipments of goods." We think that the plaintiff was entitled to this instruction, especially in view of the fact that the question was a very close one, upon the evidence, whether any such direction had been given. The terms of the instruction have been criticised in that it directs the attention of the jury to the testimony of a particular witness. It is true that where there are several witnesses testifying to a particular hypothesis of fact, it is error for the court, in instructing the jury, to single out a particular witness and direct their attention to his testimony, either in the way of disparagement, as where the court gives in respect of a particular witness the familiar direction explaining the maxim,

*fals us in uno, falsus in omnibus*, or where, by singling out the testimony of a witness, the tendency of the instruction is to leave the jury to attach undue importance to it. But this principle can have no application in this instance. Here, Mr. Sample was the only witness for the defendant who testified to the existence of the special direction or to its terms. It was from his lips alone that the language of the direction, as he recollected it, was delivered. The language in which the instruction was drawn, then, in so far as it alluded to the "directions such as witness Sample testified to," was merely a method of identifying that element of the defendant's evidence. The instruction had no tendency to disparage the testimony of that witness, and no objection is perceived to the language in which it is drawn, except that it might have been less inartificial in its terms. We, therefore, conclude that the court erred in refusing this direction.

For the two errors pointed out, the judgment will be reversed and the cause remanded; Judge BIGGS concurs; Judge ROMBAUER concurs in the result.