KECO INDUSTRIES, INC., Appellant,

v.

ACF INDUSTRIES, INCORPORATED,
Appellee.

No. 8695.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 10, 1963.

Decided April 22, 1963.

Paul Watson Steer, Cincinnati, Ohio
(Steer, Strauss & Adair, Cincinnati,
Ohio, Donald N. Rothman, and Gordon,
Feinblatt & Rothman, Baltimore, Md.,
on the brief) for appellant.

Benjamin C. Howard, Baltimore, Md.
(William B. Rafferty, Norman E. Burke,
and Miles & Stockbridge, Baltimore, Md.,
on the brief) for appellee.

Before HAYNSWORTH, BOREMAN
and BELL, Circuit Judges.

BOREMAN, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the District of Maryland. Keco Industries, Inc., hereinafter referred to as Keco, instituted the action, seeking damages for an allegedly wrongful termination of the contract which is the subject of this controversy. ACF Industries, Incorporated, defendant below, hereinafter referred to as ACF, served a counterclaim against Keco for damages for breach of the subject contract. After a trial wherein the District Court sat as the trier of facts in lieu of a jury, a judgment for ACF on Keco's claim and a judgment in favor of ACF against Keco on the counterclaim were rendered. A subsequent motion by Keco for a new trial or for amendment of the judgments was denied and Keco has appealed.

The trial court stated findings of fact and conclusions of law in an oral opinion, a transcript of which is a part of the record herein, and again in a written memorandum opinion filed herein. We find no reversible error in either the findings of fact or stated conclusions of law.

ACF, of Maryland, was the prime contractor for the production of certain trailer units for the United States Navy and sought and obtained the services of Keco, of Ohio, as a subcontractor, for the manufacture of eight air conditioning units, some intended for installation within and others underneath the trailers. The air conditioning units, the detailed specifications for which were set out in the written contract between the parties hereto, were to be manufactured at Keco's plant in Ohio and delivered to ACF's plant in Maryland. The contract also provided that performance was subject to both government and ACF inspection and acceptance of the units after their delivery at ACF's Maryland plant.

Keco contends that the District Court erred in applying the law of Maryland, rather than the law of Ohio, in determining the matters involved in this contractual controversy. Although we have neither found nor have we been shown wherein the applicable laws of the two states differ in any material respect, we are of the opinion that the conclusion of the court in this particular was correct. Both parties agree that the place of contracting is the place where the last act necessary to complete the contract and give it validity was performed —in this case the place where the final acceptance was mailed. Restatement, Conflict of Laws, § 326 (1934); 11 Am. Jur., Conflict of Laws, § 115 (1937); 2 Beale, Conflict of Laws, § 314.1 (1935). In response to ACF's "Request for Quotation," containing detailed specifications of the desired units, Keco, in February 1959, submitted by mail a quotation. Thereafter a "Purchase Order," dated March 13, 1959, was mailed to Keco by ACF from Maryland. Keco contends that its subsequent acknowledgment of the Purchase Order, mailed in Ohio, constituted a final acceptance. However, as found by the trial court, it is quite clear that the final acceptance was ACF's purchase order and, therefore, the contract was complete upon its posting in Maryland. The purchase order, based entirely upon Keco's quotation, did not alter in any material respect the terms of the quotation. The acknowledgment of the order by Keco was legally superfluous as the contract was already in existence. Therefore, the place of contracting was Maryland. The law of the place of contracting governs matters bearing upon the execution, interpretation and validity of the contract but matters arising in connection with performance of the contract are governed by the place of performance, the place where the contract by its terms is to be performed. Scudder v. Union Nat. Bank, 91 U.S. 406, 23 L.Ed. 245 (1875). See, also, Annot. 50 A.L.R.2d 254 (1956). Although the issue was not raised in this case it should be noted that, as Maryland was by the terms of the contract the place where the final acts of performance would occur, namely, the ultimate delivery and acceptance of the merchandise, Maryland was the place of performance. 11 Am. Jur., Conflict of Laws, § 131 (1937).

■ During the period covered by the terms of the contract, Keco manufactured and shipped several of the air conditioning units; but the units, when received and inspected, were found by ACF to be defective in many respects and therefore unacceptable. These units are the subject of ACF's counterclaim. Keco contends that ACF failed to notify it of the defects and discrepancies as required by the applicable sections of the Sales Acts of both Maryland and Ohio. Md. Code, art. 83, §§ 66 and 67; O.R.C. §§ 1315.49 and 1315.50. The requirement as to notice under these statutes was, however, abundantly met. The record discloses that on April 7, 1960, the day following the receipt of the units which were the subject of ACF's counterclaim, these units were installed in the trailers for a test which was conducted in the presence of one of Keco's representatives and the discrepancies noted at that time were pointed out to Keco's representative. Furthermore, by letter dated April 28, 1960, ACF formally advised Keco of the discrepancies which it deemed so serious as to render the delivered units unsuitable for their intended use and requested that Keco indicate what it planned to do about the situation. It appears that Keco replied to ACF's letter disputing the existence of discrepancies and denying responsibility, but this action neither corrected the noted discrepancies nor eliminated the fact that notification as to the claimed discrepancies had been given. The amounts included in the counterclaim were the expenditures by ACF which were necessary to bring the units up to contract specifications.

■ As for the units which are the subject of Keco's main claim against ACF, which units were found by inspection at Keco's plant four and one-half months after the agreed delivery date to be deficient and which were, in fact, never delivered, Keco contends that there was a waiver by ACF of the terms of the contract and that "ACF is estopped to take back its waiver." What Keco apparently means to assert is the doctrine of promissory estoppel, the fundamental basis of the legal principle generally known as waiver. Although it is perhaps misleading to suggest that the promisor in such a case, the one claimed to be estopped, must have intended to surrender a right, the doctrine presupposes action or words on the part of the one sought to be estopped amounting to a promise that he will not rely on the conditions of the contract *but will perform his part of the contract whether the other party performs the conditions or not.* See 3 Williston on Contracts, §§ 689–692 (Rev.Ed.1936). There is, however, no factual basis in the instant case for the application of the doctrine of waiver or promissory estoppel. The District Court's finding that ACF never acted in a manner inconsistent with its insistence upon its rights under the terms and conditions of the contract but that it continuously asserted such rights, although at the same time attempting to obtain performance by Keco, is amply supported by the evidence. There were some negotiations between the parties aimed at attempting to complete the contract without the necessity of termination. ACF suggested an adjustment based on a one-third reduction in the contract price for these undelivered units, but Keco refused this proposal and insisted upon the "full contract price—or nothing." Meanwhile Keco continued to work on the undelivered units in an attempt to bring them into conformity with the contract specifications, which was nothing more than it was required to do under the provisions of the contract. In one interview between the parties ACF told Keco to ship the units in their then condition since ACF's schedule under its prime contract with the Navy would not admit of Keco's holding and delaying shipment of the units any longer. At the same time ACF indicated that it might be able to convince the Navy to alter its specifications so as to render the units acceptable. However, Keco never shipped the units and the specifications were never modified or altered either by the Navy or by ACF.

Keco further contends that there was a modification of the contract. However, as has been demonstrated and as found by the District Court, no agreement as to any modification was ever reached in the particular matters involved. There was, therefore, no effectual modification of the contract, as mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract. Vincent v. Palmer, 179 Md. 365, 19 A.2d 183 (1941); 12 Am.Jur., Contracts, § 427 (1938); 6 Williston on Contracts, § 1826 (Rev.Ed.1938). Furthermore, it must be noted in this connection that the subject contract specifically provides that any changes in specifications, or work orders, must be made in writing, and no written change pertinent to the matters here considered was shown to have been made.

Affirmed.