### CALDWELL v. SEABOARD AIR LINE RY.

1. FELLOW-SERVANTS—JURY—CONFLICT OF LAWS.—There being a contention as to whether an oral contract of employment was made in this State or in North Carolina, and whether the law of this or that State governed, it was proper for trial Judge to properly define "fellow-servant" and "common undertaking," and the laws of this and that State applicable thereto, and submit to the jury whether the yard conductor, engineer and brakeman were fellow-servants.

2. CONTRACTS—IBID.—IBID.—Where an oral contract is made in this State to work with a railroad company as brakeman in the State of North Carolina, and while there so employed the employee is promoted to yard conductor, and while so employed in North Carolina he is injured, it is proper to submit to jury whether he was working under a contract made in this State or in North Carolina.

3. NEW TRIAL.—Jury held not have refused to regard the instructions of the Court on the law, and no error to refuse new trial on that ground.

4. IBID.—In overruling motion for new trial, it is not errow of law for Judge to state as his conclusions from the evidence facts which were not proved.

Before GAGE, J., York, April Term, 1905.   Affirmed.

Action by Jos. H. Caldwell against Seaboard Air Line Railway. The following is the Judge's charge:

"Gentlemen of the jury: Before I proceed to charge you the law in this case as I see it, I will take up the requests to charge, and that means the law as it is seen by the counsel for the parties. The plaintiff in the case, Mr. Caldwell, makes no written requests. The defendant, the railroad company, makes these requests, seven in number, Mr. Stenographer, all written, and all of which I charge:

" 'I. That plaintiff, in his complaint, charges and alleges that he was injured by the negligence of the defendant railway company. It is, therefore, incumbent upon him, before he can recover, or even make out *prima facie* case, to satisfy the jury, by the preponderance of the testimony, that he was injured, and that the said injury was the immediate and direct result of the negligence and carelessness of the defendant railway company. The burden of the proof is upon him to make out his case by the greater weight of the testimony. It will not be presumed that the defendant was guilty of negligence.

" 'II. If the plaintiff's injuries were the result of a pure accident, such as could not ordinarily be anticipated, and not the result of the negligence of either the plaintiff or the defendant, then the plaintiff cannot recover. He cannot recover at all unless his injuries were caused by the negligence of the defendant company or its employees.

" 'III. Even if the plaintiff was injured by the negligence of the defendant company or its employees, and he was also guilty of negligence, and his negligence contributed to his injuries as an immediate and proximate cause, then he cannot recover. If the plaintiff was guilty of negligence, and his negligence concurred and combined with that of the defendant in bringing about his injuries, this will deprive him of the right to recover, although the defendant may have been guilty of negligence, and that negligence may have been the immediate and proximate cause of his injuries.' I change that to 'one of the immediate and proximate causes.'

" 'IV. The statute of North Carolina, in evidence in this case, in reference to the liability of the railroad for the negli-

gence of its servants, does not deprive the railroad company of the defense of what is commonly known as contributory negligence.

" 'V. Contributory negligence is the want of ordinary care on the part of the person injured by the actionable negligence of another, combining and concurring with that negligence and contributing to the injury as the proximate cause thereof, without which the injury would not have occurred.

" 'VI. The Supreme Court of South Carolina has placed acts of omission and commission on the same plane in adopting the following definition of contributory negligence, to wit: "Properly speaking, contributory negligence, as the very words import, arises when the plaintiff as well as the defendant has done some act negligently, or has omitted through negligence to do some act which it was their respective duty to do, and the combined negligence of the two parties has directly produced the injury."

" 'VII. If the testimony satisfies you that there were not a sufficient number of hands when this conductor of the yard at Monroe, North Carolina, started to make up the train at the time stated in the complaint, it was his duty at that time to refuse to make up the train described in the complaint with such inadequate help, but if you find from the testimony that the plaintiff nevertheless did make up the train with such inadequate help, he waived the obligation of the defendant to him, and made up the train at his own risk, and if you find from the testimony that plaintiff was injured while making up the train with inadequate help, and from such cause, he cannot recover of defendant.'

"Now, gentlemen, in my own way I will try briefly to help you to a conclusion in this case, and it is always a matter of great pain to me, gentlemen, that it is such a difficult matter to state to a jury of men plainly, without technicalities, and in a way they can understand it, the principles of law by which they are guided. I will endeavor to do so in this case, and, if you follow the law, whether you think it is good law or bad law, and then if you apply that to the testimony of the

witnesses on the stand, you are bound to reach a correct verdict, and you cannot reach a verdict which will be hurtful to anybody, because if I charge you the law, wrongfully, gentlemen, there are four Judges at Columbia, with great wisdom, to examine it more carefully, and to send it back to a jury to try it according to right law, if I charge you the wrong law. Now, so much.

"At the threshold of the case, gentlemen, and somewhat out of its regular order, but it seems to me in its logical order, lies this question of fellow-servants, about which you heard so much talk.

"It is contended by the defendant company, the railroad company, that these three men working with that train on that night, were fellow-servants, to wit: Caldwell, the plaintiff, and the man Morrow, and the man Jackson—the yard master or yard conductor, as Caldwell is described, the plaintiff, and the two brakemen, Jackson and Morrow.

"Now, I say the contention of the railroad company is that they were fellow-servants, and, if fellow-servants, were governed and controlled by the law of fellow-servants as understood in this State. Now, the law of fellow-servants, gentlemen, rests upon the primary law, which means that when a man has a servant—and by servant I do not mean manual servant, as understood generally in this country, but I employ that when a man has a servant about a job, and that servant undertakes to do that job, if he wrongfully and negligently does a man injury in doing that job, he is not only liable, but his master is liable, too. I will illustrate it this way, gentlemen. You send a man in a yard to cut your wood. He is your servant. His business is to cut the wood, and the law puts it upon him, and puts it upon you that he shall cut that wood in a careful manner. If in the cutting of the wood, gentlemen, he is guilty of negligence by which another man is injured, why he is liable to that other man, and so are you, because if you have employed a negligent man, and a negligent man in the performance of that duty has done harm to another person, he is liable, because he did

it, and you are liable because you put him in your place to do it, and he has done it negligently. Now, you understand, Mr. Foreman. Well, now, that is the law of master and servant.

"Well, now, we will put another man in the yard, two men to cut wood. Now, suppose one of these men cutting wood negligently hurts the other fellow. The question arises : Are you liable for that injury to the other fellow? These two men are called fellow-servants—fellow-servants to you, one principal—and if one hurts the other through negligence, then you are not liable to that other, because long ago our Court settled that fact. It is not necessary now to inquire into the reason of it. It would confuse you to do it, but that is the settled law of this State—where two men are working as fellow-servants for one principal, and one by negligence hurts the other, the master is not liable. Now, that is the law of fellow-servants in this State.

"The law of fellow-servants as laid down by our Courts means this: They are fellow-servants where they are employed in a common undertaking—you know what that means—and sustain towards each other the relation of fellow-servant, of exercising only the ordinary duties of the employment, even when they cannot see each other, or are working apart, and not in conjunction.

"Now, in this case, I charge you, if these two men bore that relation to one another, and you are to say whether they did, were they employed in a common undertaking? If they were, according to the definition I have given you, then they were fellow-servants.

"Now, the contention of the railroad company is being fellow-servants, that the railroad was not liable for the negligence of one man towards the other. Well, now, here arises another difficulty in the case. That is this. It is charged in this case this injury was done in North Carolina, at Monroe. It is further charged by counsel that this contract of employment was made in South Carolina, that the railroad company and Caldwell made the contract in South Carolina,

at Abbeville. That is what counsel said about where Cald-
well was employed as a yard conductor, and the contract was
made here, and he went over into North Carolina to perform
it, and Caldwell got hurt there, and now Caldwell comes back
and sues here. So that adds some complication to the case.
The law of States differ. The laws of North Carolina and
South Carolina about this law of fellow-servants is different.
The law of North Carolina as to fellow-servants isn't the
same thing I have charged you is the law of South Carolina.

"So now I charge you this, gentlemen, that the plaintiff in
this case bases his right to recover upon the fact that he was
in the employ of the railroad company as a yard conductor;
that they made a contract that he was to be yard conductor
(the complaint doesn't call it a contract, but the complaint
alleges that he was in the employ of the railroad company,
as a yard conductor) ; and that he went to North Carolina,
to Monroe, to perform that service, and I charge you that
when they made the contract, one to give employment, and
the other to do the employment as yard master or yard con-
ductor, that was written into the contract, the law of the
land, just as much as if they had written it out with pen and
ink. We make this contract—the one to serve as yard
master, the other to pay him as yard master—and we write
in the contract all the law of the land, whatever that be.
Now, I charge you this, gentlemen, if the accident at bar had
occurred in South Carolina, then it would have been subject
and governed by the law of fellow-servants, as I have
charged you. There is no question about that.

"I charge you, secondly, if the accident occurred in North
Carolina, under a contract of employment there, that is, in
North Carolina, the case would have been governed by the
fellow-servant law there, even though the suit be in South
Carolina, and the North Carolina law is as follows about
fellow-servants. Now, the North Carolina law on that sub-
ject is stated by Mr. Hart, in his complaint, that under the
laws of the State of North Carolina, in force for more than
seven years last past, 'Any servant or employee of any rail-

road company operating in that State, who shall suffer injury to his person in the course of his service or employment with said company by the negligence, carelessness or incompetency of any other servant, employee or agent of the company, or by any defect in the machinery, ways or appliances of the company, shall be entitled to maintain an action against such company, and any contract or agreement, expressed or implied, made by any employee of a railroad company to waive the benefit of the said laws, shall be null and void, under the said laws of the said State.'

"Now, that is the law of North Carolina about fellow-servants, and I charge you as I did before that if the accident did occur in North Carolina, and if the contract of service was made there, then the case would be governed by the fellow-servant law that I have just read to you, even though the suit be brought in South Carolina, but those are not the facts as stated by counsel. Counsel stated that the accident occurred in North Carolina, and one of the counsel states that the contract of service was made in South Carolina, and you know that the suit is being brought here. So, now, is the law of North Carolina or the law of South Carolina going to apply? If the accident had occurred in North Carolina, under a contract of employment in South Carolina, and if the injured party returns here to sue on contract, the case is governed by the fellow-servant law here. I will state that again. If the accident occurred in North Carolina, under a contract of employment here, and if the injured party returns here to sue on the contract, the case is governed by the fellow-servant law here.

"Now, next and after that. Where a contract of employment was made, is a question of fact for the jury. A contract for employment may be expressed or it may be implied. Now, you heard the testimony about the contract here of employment. Such a contract may be expressed, or it may be implied. If the plaintiff had expressly agreed with the railroad company to work for it in North Carolina, subject to the South Carolina laws, then in a suit here he would

be bound by that contract. That is to say, gentlemen, if they had specifically agreed in so many words in writing, Caldwell and the railroad company, if the contract was made between them in South Carolina, and they said, 'We agree to work, one as a railroad company and the other as a yard master, and we agree that our relationship shall be governed by the laws of South Carolina at all times, no matter where we work,' then they would have been so governed no matter where they worked, whether North Carolina, Georgia or Virginia, because that was the contract. But in this case, there was no writing showing any express contract, and you heard from the witnesses on the stand whether there was any verbal, expressed contract. Has any witness sworn that the express contract was that they should be always governed by the law of South Carolina, whether they worked in North Carolina, or whether they worked in South Carolina? If so, then it is a South Carolina contract? If not, then I leave it to the jury to say what the contract of the parties was. If the plaintiff did not expressly agree to that, what did he and the railroad company impliedly agree to by his transference from South Carolina to North Carolina? Did they intend that the contract of employment should be one in North Carolina when he went there, if he did go there, or if it should be a South Carolina contract still? That is a question for the jury to decide from all the evidence and the conduct of the parties. Now, gentlemen, with the little consideration I have been able to give it, that is as near as I can come at it, and it is as apt to be wrong as right. That is very clear to me. I don't know whether it is clear to you or not.

"We will go one step further, and I will talk to you in a little more plain language about negligence. The basis of this action, gentlemen, is negligence, and that is to say, and about this branch of the case I am going to talk to you, the laws of North Carolina and the laws of South Carolina do not cut any figure. The law is the same in both States. The basis of this action is that the railroad company owed

a duty to Caldwell, which it failed to perform, and the basis of the defense is that Caldwell owed a duty to the railroad company, which he failed to perform. Now, you take up those two issues and try them.

"Now, I will charge you right here, gentlemen, so as to put it clearly in your head. If the accident occurred, and occurred as the result of the railroad company's negligence, and occurred by reason of that, and that alone, the railroad's negligence, moving this way, like my hand (indicating), and did the devilment, and did it alone, then the railroad company is liable; but if the accident occurred by reason of the negligence of both parties moving this way like my two hands (indicating), and did the devilment, then the railroad company is not liable. The Courts and some of the Judges call that conduct on the part of the plaintiff contributory negligence. I call it negligence. It is a question of negligence.

"Now, what is negligence, gentlemen? It would be hardly worth while to define negligence to you when you know yourselves. Negligence is the failure of a man or a corporation to come up to the ordinary standard of men or corporations. We are all measured not by the conduct of a smart man, or by the conduct of a weak man, but measured by the conduct of the ordinary man, and when your child, Mr. Foreman, does wrong, or is charged with doing wrong, and you bring him before you for trial, you immediately inquire, has this child done wrong, and you do not fix the highest standard for him, and don't fix the lowest standard. You fix the standard of the common child, has he done what an ordinary child under like circumstances, under all the environments, would have done. If he has, he has come up to the standard, and you let him go. If he has done less than he ought to do, or done more than he ought to have done, you punish him. One we know as omission, the other as commission. The great inquiry in this case is, has the railroad company done things in this case that it ought not to have done, or has it left undone things it ought to have done, and by that I mean has it in the operation of its railroad,

through its servants, come up to the standard of the ordinary person in what it has done, or has it fallen short. Now, first establish the standard to which they must come, and inquire whether their conduct has fallen short of the standard. If it has fallen short of the standard, that is what the law calls negligence.

"Now, what are the acts of negligence charged here against the railroad company? The acts of negligence are these: That the railroad company was in duty bound to furnish Caldwell with two brakemen, and it failed to do that. That is the first, they put their fingers on like a surgeon would put his fingers on a muscle in the body. The second one is this: That the railroad company owed the duty to Caldwell to give him a good engine, and it failed to do it. That is the second one. What is the third one? The third one is: That the railroad company owed the duty to give the right signals to Caldwell about the movement of the train, and that it failed to do it.

"Now, gentlemen, all of those three are questions of fact. Was the railroad company under obligations, was it its duty, and you know what duty means, was it the duty of the railroad company to give Caldwell two brakemen, and if it was its duty, did it give him two brakemen, and if it did not give him two brakemen, was that one of the things which led to this accident? Those are questions for you.

"So with the next issue. It is manifestly the duty of the railroad company to give a reasonably safe engine. The law says that. Now, the jury must say whether or not the railroad did give Caldwell a safe engine. If it did, it has come up to the standard. If it did not, it is for the jury to say whether or not that is an act of carelessness. It is for the jury to say whether or not they did give the engine, and whether or not it was an unsafe engine.

"So with the other issue. Did they fail to give Caldwell the right signals of the movements of those trains, and was that the cause of his injury? Was that one of the causes? That is a question for the jury.

"Now, gentlemen, if you find that those acts, or any one of them, was done by the railroad company, and that that act or failure to perform the act was negligence, as I have described to you, and if you find that injury resulted to Caldwell as the cause of that, the next cause to that, then the railroad company is guilty of negligence, and is bound to pay the damage, unless, as I told you in the outset, the railroad company establishes these acts of negligence on Caldwell's part. Now, what do they say? The railroad company comes back in the same language Caldwell does. They say it was the duty of Caldwell to keep from between the cars. It was his duty not to work with an inadequate force. Now, fix, gentlemen, a standard for him just like you fixed for the railroad. He charges the railroad with negligence, and the railroad charges him with negligence. Fix the standard. Inquire for yourselves whether it was negligence for Caldwell to have gone between the cars, as counsel say he did. Did he go between those cars? Was it an act of negligence for him to go between the cars? You have heard all the testimony. Does he fall short of the standard of a reasonable man in what he did that night? If he does, that is negligence. Was that an adequate force, gentlemen, for him to make up the freight train that night? Were there too few brakemen there? Counsel for the plaintiff charges there was in his complaint, says it led to the accident, because there were too few men to operate the train. Well, now, gentlemen, was it an act of negligence? If a man goes into the performance of a task with too few hands, and disaster comes to him, counsel for the railroad says that is negligence. Well, now, as I charged you in this business of negligence, if the disaster was brought about by the carelessness of both of them working together, operating together like two strands of rope, gentlemen, and brought about the disaster, then the law leaves them both where it found them.

"Now, on the question of damages. I can't assist you on that, gentlemen. The plaintiff sues for $20,000. That is a

matter always left in the wise discretion of a jury. I take it
for granted, gentlemen, when a jury goes to assess damages
that it does its best to formulate some rule, it makes a wise
survey of all conditions, it takes into consideration its know-
ledge of its own affairs in life, and it takes into consideration
those matters with an honest desire to do justice between
litigants, to fix the damage as near as it can at what is right,
and, as I have often said to juries before, no matter what
duty you are called to perform, you never will be called to
perform a higher duty than that of sitting in judgment be-
tween your fellow-men. If your neighbors fall out, and call
you to settle their controversy, you ought to be uplifted by
every high motive to do the right thing. Your neighbors,
your fellow-citizens, have fallen out, and the law has called
you in to settle the difficulty, and that ought to inspire in
every man the highest and best motives to do the best service
in him.

"Now, gentlemen, I will not talk to you any more. I am
sorry to have talked to you so long. If you find for the
plaintiff, say, 'We find for the plaintiff,' and sign your name
as foreman. If you find for the defendant, say, 'We find
for the deefndant,' and sign your name as foreman. And
if you find for the plaintiff, specify how much, and write it
out in words, and, Mr. Foreman, do not express it simply in
figures. You understand. Write your verdict, gentlemen,
upon the back of this complaint, Mr. Foreman, beneath the
cross mark, and sign your name as foreman."

From judgment for plaintiff, defendant appeals on fol-
lowing exceptions:

"I. For that his Honor, under the undisputed evidence in
this case, that the employees of the defendant, through
whose negligence the injury to plaintiff is alleged to have
been sustained, were at the time of such injury exercising
only the ordinary duties of their employment with plaintiff,
another employee of defendant, in a common undertaking,
that of making up a freight train for their common master,

the defendant, erred in submitting to the jury the question whether said employees, or any of them, were fellow-servants with plaintiff.

"II. For that the undisputed testimony in this case being susceptible of but the single inference that the engineer in charge of the switch engine in the yard at Monroe, N. C., and the brakeman, Jackson, were performing their ordinary duties, and that in the absence of the other brakeman, Morrow, plaintiff, without orders or instructions from defendant, was performing the ordinary duties of the absent brakeman, when he received the injuries complained of, the question whether said yard engineer and brakeman were fellow-servants with plaintiff, was one of law for the Court, and it was error on the part of his Honor to submit same to the jury.

"III. For that his Honor, under the undisputed evidence in this case, that the employees of defendant, through whose negligence the injury to plaintiff is alleged to have been sustained, were at the time of such injury exercising only the ordinary duties of their employment, erred as matter of law in not instructing the jury, as contended by the defendant, that said employees and plaintiff were fellow-servants, and under the further undisputed fact that the contract of employment between plaintiff and defendant was made and entered into at Abbeville, S. C., were governed and controlled by the law of fellow-servants, as understood in this State.

"IV. For that his Honor erred in charging the jury as follows: 'Now, in this case, I charge you if these two men bore that relation to one another, and you are to say whether they did, were they employed in a common undertaking. If they were, according to the definition I have given you, then they were fellow-servants,' the error being that the undisputed testimony established that the employees of defendant, through whose negligence the injury to plaintiff is alleged to have been sustained, were each at the time of the injury exercising their ordinary duties and were employed in a common undertaking with plaintiff for their common master,

the defendant, and his Honor should have instructed the jury as matter of law, that said employees were fellow-servants with plaintiff.

"V. For that his Honor having charged the jury in substance and effect, that plaintiff's action in this case is not in tort, *ex delicto,* but *ex contractu,* for breach of contract, erred in submitting to the jury the question where the contract was made, whether in South Carolina or in North Carolina, the undisputed evidence of plaintiff, himself, being that the contract between himself and defendant, was made and entered into at Abbeville, S. C.

"VI. The undisputed evidence of the plaintiff, himself, being that the contract of employment between himself and defendant was made in Abbeville, S. C., at a time when plaintiff was a resident of this State, and there being absolutely no testimony whatsoever as to the law of which State the parties contracted should govern them in performing that contract, it was error on the part of his Honor to submit to the jury, the question whether the parties had in mind the law of South Carolina or the law of North Carolina at the date of the contract, and also at the time of the transfer of plaintiff from South Carolina to North Carolina.

"VII. For that his Honor erred in charging the jury as follows: 'Well, now, here arises another difficulty in the case. That is this: It is charged in this case, this injury was done in North Carolina, at Monroe. It is further charged by counsel that this contract of employment was made in South Carolina; that the railroad company and Caldwell made the contract in South Carolina, at Abbeville. That is what counsel said about where Caldwell was employed as yard conductor, and the contract was made here, and he went over into North Carolina to perform it, and Caldwell got hurt there, and now Caldwell comes back and sues here,' the error being:

"a. The fact that the contract of employment between plaintiff and defendant was made and entered at Abbeville, S. C., was established by the undisputed evidence of plaintiff,

himself, and did not rest on the mere charge or statement of any of the counsel in the case.

"b. The jury was thereby misled into supposing that the fact that said contract was made in Abbeville, S. C., rested entirely on the mere charge or statement of the counsel or of some of the counsel in the case, and did not rest upon the undisputed evidence of plaintiff that such was a fact.

"c. In the absence of all testimony to the contrary, it became the duty of the Court to instruct the jury that the place of the making of the contract is presumptively that of its performance by the law whereof it is to be interpreted and its effect defined, regardless of where the contract was being performed, when the accident occurred.

"VIII. For that his Honor, under the undisputed evidence in this case that the contract of employment between plaintiff and defendant was made in South Carolina, and in the absence of all testimony as to the laws of which State the parties contracted that they should be governed in its performance, erred in reading and explaining to the jury the statute law of the State of North Carolina abolishing the common law, which exempts the master from liability for injury to a servant sustained at the hands of a fellow-servant, the said statute, under the undisputed evidence, being inapplicable to this case.

"IX. For that his Honor erred in charging the jury as follows: 'Now, that is the law of North Carolina about fellow-servants, and I charge you as I did before, that if the accident did occur in North Carolina, and if the contract of service was made there, then the case would be governed by the fellow-servant law that I have just read to you, even though the suit be brought in South Carolina, but those are not the facts as stated by counsel. Counsel stated that the accident occurred in North Carolina, and one of the counsel states that the contract of service was made in South Carolina, and you know that the suit is being brought here. So now is the law of North Carolina or the law of South Carolina going to apply?' the error being:

"1. The fact that the contract of employment between plaintiff and defendant was made in Abbeville, S. C., rested not on any statement of any of the counsel on either side of the case, but on the undisputed evidence of plaintiff, establishing the place where the contract was made and what were the terms of his said contract.

"2. The contract as established by the undisputed evidence of plaintiff himself, being silent as to what law should govern them in performing same, the Court should not have submitted to the jury the question, 'is the law of North Carolina or the law of South Carolina going to apply?' but should have instructed the jury that in the absence of all testimony to the contrary, it became the duty of the Court to charge the jury that the law of South Carolina, where the contract was made, is presumptively that of its performance, by the law whereof it is to be interpreted and its effect defined, regardless of where the contract was being performed when the accident occurred.

"3. The jury was thereby misled into supposing that the fact that said contract was made in Abbeville, S. C., rested entirely on the mere charge or statement of counsel or of some of the counsel in the case, and did not rest upon the undisputed evidence of plaintiff that such was a fact.

"X. For that his Honor erred in charging the jury, as follows: 'If the accident had occurred in North Carolina, under a contract of employment in South Carolina, and if the injured party returns here to sue on contract, the case is governed by the fellow-servant law here. I will state that again. If the accident occurred in North Carolina, under a contract of employment here, and if the injured party returns here to sue on the contract, the case is governed by the fellow-servant law here,' the error being that all of the facts on which his Honor based or predicated his instruction, being either admitted or established by undisputed testimony of the plaintiff, it became the duty of the Court to instruct the jury that the case is governed by the fellow-servant law of South Carolina.

"XI. For that his Honor erred in charging the jury: 'But in this case, there is no writing showing any express contract, and you heard the witnesses on the stand whether there was any verbal expressed contract. Has any witness sworn that the express contract was that they should be always governed by the law of South Carolina, whether they worked in North Carolina, or whether they worked in South Carolina? If so, then it is a South Carolina contract. If not, then I leave it to the jury to say what the contract of the parties were,' the error being:

"a. That the jury were thereby misled into supposing that unless the parties expressly contracted that in the performance of said contract, they would be governed by the law of South Carolina always, whether they worked in North Carolina or in South Carolina, the law of South Carolina would not govern in the interpretation of said contract; whereas, it is respectfully submitted, under the undisputed testimony of the plaintiff himself, establishing the fact that the contract was made in South Carolina and the terms thereof, it became the duty of the Court to instruct the jury that in the absence of anything indicating the contrary, the place of the making of the contract is presumptively that of its performance, by the law whereof it is to be interpreted and its effect defined.

"XII. For that his Honor erred in not granting defendant's motion for a new trial on the minutes of the Court on the grounds: 1. That the verdict of the jury was in direct conflict with the law as charged it by the Court. 2. That the verdict was against the clear preponderance of the testimony, the errors being:

"a. That the jury disregarded and failed to follow the law of contributory negligence, as charged by the Court, it having been charged by plaintiff in his complaint that he was injured because he did not have a sufficient number of brakemen to make up the freight train, and the undisputed evidence being that he did not refuse to make up the train with such inadequate force, but, on the contrary, attempted to do so, he himself discharging the duty of a brakeman, and

receiving his injury by an error of judgment as to the distance of the shifting engine from him when he went between the cars, where he was injured.

"b. The admission of plaintiff, contained in his letters, exhibits C and D, to the testimony, showed that he was guilty of contributory negligence in going between the two box cars when he did, and that the accident occurred through the miscalculation or error of judgment on the part of plaintiff as to the distance of the shifting engine from him, when he went between the cars.

"c. That the jury disregarded and failed to follow the law as charged by the Court as to the waiver by plaintiff of the obligation of defendant to him and the assumption of risk by plaintiff, if he did not refuse to make up the freight train with an insufficient force, but persisted in doing so, the undisputed evidence being that plaintiff did not refuse to make up the train with an insufficient force, but, on the contrary, attempted to do so, he himself discharging the duty of brakeman, and receiving his injury by an error of judgment as to the distance of the shifting engine from him, when he went between the cars, where he was injured.

"d. That the jury disregarded and failed to follow the charge of his Honor in the following particular, to wit: 'If the accident had occurred in North Carolina, under a contract of employment in South Carolina, and if the injured party returns here to sue on contract, the case is governed by the fellow-servant law here. I will state that again. If the accident occurred in North Carolina, under a contract of employment here, and if the injured party returns here to sue on the contract, the case is governed by the fellow-servant law here,' the undisputed proof being, that the accident did occur in North Carolina under a contract of employment made in South Carolina, and plaintiff returned to South Carolina to sue on contract.

"e. The admission of plaintiff in his letters, exhibits C and D, to the testimony, standing alone, were sufficient to defeat a recovery in favor of plaintiff, and his Honor erred

in not granting a new trial, because the verdict was not only against the clear preponderance of the evidence, but without any evidence to sustain it.

"XIII. For that his Honor, in his order refusing defendant's motion for a new trial, erred in making the following statement: 'Plaintiff was required to go between the cars to uncouple the air hose, he did so, and while in the act an engine which was doing the "shifting," drove a freight car over him,' the error being that there was absolutely no evidence that plaintiff was required to go between the cars to uncouple the air hose, but, on the contrary, the undisputed evidence was, that it was no part of his duty to uncouple the air hose, and he did so of his own volition, without orders or instructions to do so from defendant."

*Messrs. J. L. Glenn* and *Wm. B. McCaw*, for appellant. *Mr. Glenn* cites: *Laws of State where contract made governs its nature and interpretation:* 129 U. S., 397. *If jury disregards instructions as to law new trial should be granted:* 68 S. C., 523.

*Mr. McCaw* cites: *As matter of law plaintiff engineer and brakeman were fellow-servants:* 51 S. C., 96; 66 S. C., 91. *Contract having been made in this State, Judge should have so held and applied law of this State:* Bish. on Con., sec. 1; 37 S. C., 411; 39 S. C., 490; 128 N. C., 286; 129 U. S., 397; 2 Kent., 458. *If facts be undisputed or admitted, Judge should apply law to them:* 57 S. C., 293; 24 S. C., 505; 37 S. C., 253; 38 S. C., 31; 47 S. C., 517. *Refusal of new trial where jury disregarded instruction as to law is error of law:* 68 S. C., 523; 16 S. C., 14; 57 S. C., 347.

*Mr. Geo. W. S. Hart,* contra, cites: *What kind of action is this?* 27 S. C., 476; 56 S. C., 187; 18 Wall., 548; 3 Hill, 251; 54 S. C., 502; 108 N. C., 417; 115 N. C., 603; 117 N. C., 566; 70 S. C., 87; 71 S. C., 390; 79 Ga., 360; 6 S. C., 135; 6 Rich., 131; 20 S. C., 139. *Law of what place*

*governs as to rights of parties:* 106 U. S., 136; 72 S. C., 404; 86 N. Y., 384; 41 Am. R., 797; 65 Am. Dec., 655; 34 Miss., 214; 19 S. C., 588; 3 Am. Dec., 414, 540; 2 Bay, 379; 1 W. Black., 258; 129 U. S., 458; 142 U. S., 109; 1 N. & McC., 175; 49 S. C., 404; 50 S. C., 309; 55 S. C., 320; 68 S. C., 238; 37 S. C., 451; 53 S. C., 76; 22 Bar., 128; Story on Con., 5 ed., sec. 804; 3 Story, 484; 56 S. C., 547; 29 S. C., 458; 35 Ga., 176; 120 N. C., 547, 966.

March 15, 1906.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   The plaintiff's action commenced in the Court of Common Pleas of York County, in the State of South Carolina, on the 27th of October, 1904, has for its object the recovery of damages for personal injury by defendant's railway on the 22d and 23d of February, 1904, while the plaintiff was acting as night yard conductor in defendant's yard at Monroe, N. C.   The case came on for trial before Judge Gage and a jury.   A verdict for $5,000 was rendered for the plaintiff.   A motion for a new trial was made upon the minutes of the Court by the defendant.   This motion was overruled.   Thereupon, after entry of judgment, an appeal was taken.

Let the charge and exceptions, except that subdivision (b) of the eleventh exception must not be included, having been abandoned by the defendant at the hearing, be set out in the report of this case.   We will now examine these exceptions in their order in groups as follows:

I. Exceptions 1, 2, 3, 4.

II. Exceptions 5, 6, 7, 8, 9.

III. Exception 10.

IV. Exception 11.

V. Exception 12.

VI. Exception 13.

I. To understand this group of exceptions, it may be said that the contract between the plaintiff and the defendant was

an oral contract made at Abbeville, S. C., by one Sellers, the train master of the defendant company. Under this contract the plaintiff first did service as a flagman and thereafter he was appointed night yard conductor in the yard at Monroe, N. C. The duties of that position amongst others were that the plaintiff should make up all trains for the defendant in the night time, and in making up such trains he would have two brakemen, and also that a yard engine with an engineer could be used in moving trains or parts of trains. While the night conductor was making up a train in said yard in Monroe, N. C., he only had one brakeman and was himself doing the work of the second brakeman; that this work was required to be speedily done, only about thirty minutes being given within which trains must be made up; that the plaintiff sent his one brakeman in another part of the yard to give signals to the engineer of the yard engine; that plaintiff himself went in between two cars to carry out a bulletin of the defendant company which required the air brakes to be uncoupled by hand, and he had just succeeded in uncoupling said air brakes between the two cars when the engine, without warning to him, or orders from him, or signals from him, with great force drove the cars, just uncoupled, together, throwing the plaintiff down upon the ground and running over his leg, from which injury his leg was amputated above the knee, and with great effort only was he saved from loss of his life.

It was in testimony by the plaintiff that the yard engine was defective, though this was denied by the testimony of the defense. A statute of the State of North Carolina is as follows: "Any servant or employee of any railroad company operating in this State, who shall suffer injury to his person in the course of his service or employment with said company by the negligence, carelessness or incompetency of any other servant, employee or agent of the company, or by any defect in the machinery, ways or appliances of the company, shall be entitled to maintain an action against such company, and any contract or agreement expressed or implied, made by

464 CALDWELL v. RAILWAY.

any employee of a railroad company to waive the benefit of said laws, shall be null and void under the said laws of the said State."

The Judge included in his charge the said statute of North Carolina in the words just quoted, and in his charge he stated that no such statute was in force *as a statute* of South Carolina, but that our law was different from the provision of the North Carolina statute.

In the first exception, the Circuit Judge is complained of in submitting to the jury whether the plaintiff and the brakeman, and engineer on this occasion, were fellow-servants. The charge when examined will be found full in its definition of the terms "fellow-servant" and "common undertaking," and these being matters of fact, were properly left to the jury. In the second exception the same question is raised, and the third exception, so far as the facts were concerned, was properly submitted to the jury, and the same thing exists in exception four. The Circuit Judges of the State are subjected to a very onerous responsibility in their charges to juries. The Constitution of the State inhibits them from charging upon facts—they cannot even state the testimony, and the Judge has, in the case at bar, very wisely contented himself with giving correct definitions of the terms "fellow-servant" and "common undertaking," and left it to the jury to say whether the relation of "fellow-servant" and "common undertaking" existed. The matters embraced in these exceptions are not where the difficulty in this case arises, as we shall see presently when we come to pass on others. These exceptions are overruled.

II. It is true, that plaintiff himself swore that his contract of employment with the defendant was entered into at Abbeville, S. C., but he stated that it was as flagman with a certain salary attached thereto that he was employed; and that subsequently he was transferred to Monroe, N. C., as night conductor in the Monroe yard at a greater salary. Now, whether this contract of employment at Abbeville was the same both as flagman and as night

yard conductor, were matters properly left to the jury, for the testimony was oral and the Circuit Judge would have had no right to have announced to the jury that the employment of the plaintiff by the defendant was the same in both instances. The Judge was exceedingly careful in his charge to the jury to discriminate betwixt the two employments, whether under the South Carolina law or that of North Carolina.

These questions have been before the Court quite recently in *Fraser* v. *the Charleston and Western Carolina R. R., ante,* 140, 146, where it was under discussion as to what law, that of Georgia or South Carolina, should apply. It was held as follows, quoting from the case of *Scudder* v. *Union National Bank,* 91 U. S., 406, 412:

" 'Matters bearing upon the execution, the interpretation or validity of a contract, are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought.' In *Levy* v. *Boas,* 2d Bailey, 219, approved in *Ayers* v. *Audubon,* 2d Hill., 604, it is declared, "That the *lex loci contractus* is to be observed on the nature, validity and construction of the contract, but the form of the action, the course of the judicial proceeding and the time when the action must be commenced, must be directed exclusively to the laws of the State in which the action is brought.' This general rule is well settled and understood * * * The contract was alleged to have been made in Georgia concerning a shipment from that State into South Carolina. It was, therefore, not to be fully performed in South Carolina, but was to be at least partly performed in Georgia, where made. It, therefore, falls within the general rule stated in 4th Elliott on Railroads, section 1506: 'That the law of the place where it is made and is to be performed either in whole or in part governs as to its nature, validity and interpretation.' To

30—73

treat the question as relating to the remedy or the evidence of the contract, is to assume that a contract has been made to be evidenced and enforced; whereas, the real question is whether any such contract exists."

Thus it will be seen that there being some doubt as to the place where the contract was made, it was important for the Circuit Judge to leave that matter open for the consideration of the jury as well as to make a ruling upon the law as it would be—in the first place, if made in North Carolina, or secondly, if made in South Carolina. These exceptions must be overruled.

III. The Circuit Judge could not have charged as indicated in the tenth exception, because if the jury found the facts introduced at the trial that the contract was governed by the laws of the State of North Carolina, he could not have charged as requested as to South Carolina. It seems to us that his charge in the alternative was correct—that is, he laid down the rule in case it was to be performed in the State of South Carolina, and also what should be the rule in case it was found in North Carolina. This exception is overruled.

IV. In disposing of the 11th exception, we find that it is bottomed on a misapprehension of the Judge's charge; for, as we have heretofore remarked, he was very careful to lay down the law applying to such findings of fact as might be made by the jury. This exception is overruled.

V. We will now dispose of exception twelve. We do not find, nor did the Circuit Judge find, that the jury failed or refused to regard the instructions on the law. His Honor's charge on contributory negligence and as to assumption of risks will be found in the charge itself to have been exceedingly carefully performed. There is no doubt that if the jury had failed or refused to obey the law, as laid down by the Circuit Judge, that this Court would not for a moment hesitate to correct such error, but they made no such mistake. This exception is, therefore, overruled.

VI. Lastly, we will consider the thirteenth exception. We do not think this exception is well taken. It does correctly

state the language used by the Circuit Judge in his order overruling the motion for a new trial, but therein he only gave the effect of the testimony upon his own mind, which he had a right to do in such order. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS *concurs in result.*